In the Matter of the Marriage of
SMITH, *Appellant,*
*and*
SMITH, *Respondent.*
(No. 75-6186, CA 9840)
584 P2d 780

Merwin C. Logan, Springfield, argued the cause for appellant. With him on the brief was Moore, Wurtz, Logan & Logan, Springfield.

Lee A. Omlid, Eugene, argued the cause and filed the brief for respondent.

Before Schwab, Chief Judge, and Johnson, Gillette and Roberts, Judges.

JOHNSON, J.

**JOHNSON, J.**

This is an appeal by the father from an order modifying the custody provisions of a dissolution of marriage decree. The original decree was entered on July 23, 1976, granting the mother custody of the son, then age 7, and the father custody of the daughter, then age 9. In July, 1977, both parties sought modification of the original decree, each requesting custody of both children. The trial court granted the mother's motion and the father appeals. We concur with the trial court's decision denying the father's motion. We disagree with the trial court's conclusion that there was a sufficient change of circumstances to grant a change in custody of the daughter.

In *Niedert and Niedert,* 28 Or App 309, 311, 559 P2d 515, 518 (1977), we stated:

> "The change-of-circumstance rule is designed to serve two functions: to discourage repeated litigation of the same issues and, more important, to provide young children with a stable environment. * * * We have long recognized the importance of a stable and secure home life and have consequently placed a high value on the stability of parental relationships. Therefore, the rule requires a showing of some change in circumstances which makes either the benefits to be gained from a change of custody or the detriment caused by not making the change outweigh the damage done to a child who is exposed to shifting parental figures. * * * (Citations omitted.)

The record indicates that the initial decree fixing custody was premised on an agreement between the parties. Both the mother and the father are loving and competent parents. The trial court found, and we agree, that the parents differ in their philosophy concerning parenting, the father favoring a more structured and disciplined approach. In the father's household the woman with whom he lives performs a substantial portion of the child care responsibilities. Members of the father's extended family also provide assistance. The mother does not appear to have the

same degree of outside support. Both parents work full time. Both children are normal, healthy and mature and well adjusted to their living environment.

The mother makes four contentions that there has been a change of circumstances warranting a change in custody. (1) She argues that her improved physical and emotional health would permit her to care for both children. It appears that she had undergone an operation for varicose veins shortly before the original decree and has now recovered. The mother also testifies that although she was seeing a psychiatrist and taking Valium prior to the decree and for a short period thereafter, her emotional health has improved and she is now neither seeing a psychiatrist nor taking medication. Under the circumstances here this improvement in her physical and emotional condition was foreseeable at the time of the decree. (2) The mother alleges that the father has delegated his parenting responsibility to the woman with whom he is living. The mother concedes, however, that at the time of the original decree she was aware that this woman was the father's housekeeper. In light of the fact that the father was and is working full time, it can only be assumed that at the time of the decree it was contemplated that a housekeeper or someone else would be performing a substantial amount of the caretaking and parental responsibilities. (3) The mother asserts the growing need of an eleven-year-old girl for a significant relationship with a maternal figure. This would have been a valid consideration at the time of the decree, but hardly constitutes a change of circumstances warranting modification one year later. The law does not contemplate shifting children between parents every time the children pass through a different stage of their physical and emotional development. (4) Finally, the mother relies on the daughter's express preference to live with her. The mother admits, however, that she has no knowledge of what the daughter's preference was at the time of the decree. The trial court also gave considerable weight to

the daughter's preference. As the trial court noted, however, both parents are dedicated and competent. The daughter loves her father and does not wish to alienate him. Furthermore, the daughter does not indicate a strong aversion to the woman the father is living with, but simply prefers her mother. The daughter's complaints concerning the woman the father is living with are not unlike those that any child would have towards persons who are responsible for their day-to-day supervision.

In summary, we are confronted with a record depicting two well-adjusted children living with parents whose marriage has been dissolved, facing the inevitable compromises that result. There is no evidence in this record to justify disturbing that adjustment. Both motions for modification should have been denied.

Affirmed in part and reversed in part. No costs.

**ROBERTS, J.,** dissenting opinion.

I disagree with the majority opinion which reverses the trial court's decision changing custody of the daughter from the father to the mother.

In *Remillard and Remillard,* 30 Or App 1111, 1114, 569 P2d 651 (1977), we stated:

"The Supreme Court in *Greisamer and Greisamer,* 276 Or 397, 555 P2d 28 (1976), set forth two essential requirements in deciding if a change of custody is warranted. The parent seeking a change in custody must show that subsequent to the last custody modification the capacity of either parent to properly care for the child has changed. And, considering all the circumstances, it would be in the best interest of the child to make the change.

"Step one in the analysis may be satisfied by showing that following the last change in custody the custodial parent's circumstances have made him less capable of caring for the child, or that the circumstances of the noncustodial parent have improved to the point that that parent can provide a good home for the child. * * *."

If there is evidence of a change in circumstances of either parent we then must consider whether the best interest of the child is served by a change in custody. *Remillard and Remillard, supra,* 30 Or App at 1114. *Henrickson v. Henrickson,* 225 Or 398, 358 P2d 507 (1961).

My analysis of the case convinces me that both of these tests have been met.

The majority states that the improvement in mother's physical and emotional condition was foreseeable at the time of the decree. I do not agree. In the absence of medical testimony, the court cannot conclude that the improvement was any more foreseeable than a worsening of her condition. The fact is that it has improved and this was a change of circumstances the court could rightly consider.

In *Wolff v. Wolff,* 25 Or App 739, 742, 550 P2d 1388 (1976), we held:

> "* * * The mother's * * * improved physical and mental health do not constitute the required change of circumstances in the absence of evidence that the father's care for the children was deficient or otherwise detrimental to them. * * *"

Thus, the mother's improved physical and mental health is not, by itself, enough to change custody, but there are other factors present here.

The father works from 4 p.m. to midnight and sees Pamela only 40 minutes a day between the time she arrives home from school until the time he leaves for work. In his testimony at the hearing, the father stated that he does not have seniority for the day shift and has made no attempt to otherwise change shifts because he does not like the graveyard shift. The record shows that the father generally works six days a week and, although there are family fishing trips on summer weekends, testimony showed that he spent the average Sunday drinking beer and watching television.

In his absence, the father has delegated virtually all of his parental authority to his live-in woman-friend, Sharon. As the majority points out, the mother testified that at the time of the divorce she understood this person to be a housekeeper. Whether Sharon has assumed the parental role by choice or by abdication of the father, it is undisputed that she makes almost all of the decisions regarding Pamela. She goes to Pamela's school for conferences and the father has never been; she fixes all the meals and the father does not get up for breakfast to see Pamela before she goes to school, and he is not present for evening meals except on weekends. Sharon makes the decisions regarding Pamela's social activities and communications (including when and if she can talk to her mother on the phone) and, in some instances, supported by the record, she has overridden decisions made by the father. It is doubtful the mother would have expected a person who was a housekeeper at the time of the marriage to exercise this authority over her daughter or that she would have expected the father to play such a small role in the daughter's life. Although the majority opinion purports to leave custody with the father, it in reality places custody with a third person.

The situation before us is analogous to that in *Hogan v. Hogan,* 6 Or App 122, 486 P2d 1309 (1971). In that case, we changed custody from a largely absent father to the mother, stating:

" 'Mr. Hogan is, in the vernacular, " ' "a good guy." ' " He has, however, necessarily had to make a choice between a domestic situation which isn't ideal, which never is in domestic situations and which the Court has to evaluate, and his business; and he has chosen his business. * * *' " 6 Or App at 126.

The lack of parenting responsibility on the part of the father, coupled with the improved health of the mother, is a change in circumstances sufficient to warrant the change in custody.

We must also evaluate whether the change in custody is in the best interests of the child. In a case of

this nature, although we review de novo, we give great deference to the findings of the trial judge who has had an opportunity to view and listen to the parties. *Starin and Starin,* 29 Or App 557, 564 P2d 748, *rev den* (1977).

The testimony as to Pamela's relationship with her father and Sharon is conflicting. However, the girl states that she is not allowed to talk with her mother on the phone or to see her at any time other than those set by court order for visitation, even though her mother lives only two blocks from her father's house. The girl expresses a concern for the arbitrary discipline of Sharon and expresses a desire to live with her mother, whom she says teaches her things and plans activities with her. A psychiatrist testified that Pamela is "a very reasonable, clear-thinking child who had sorted out a great deal for herself and was being very careful and very rational about her own choices." The psychiatrist also testified that

"* * * purely on the basis of her psychological state, which would be she has a fairly strong need at this point in her life as an eleven-year-old child, fairly mature young girl, to have a significant relationship with a maternal figure, and I think that that's important to her and important psychologically to her."

Both the children expressed a desire to live together and to live with their mother. A child's preference is considered along with all other factors in determining what is in his best interests. *Wolff v. Wolff, supra; Tingen v. Tingen,* 251 Or 458, 461, 446 P2d 185 (1968).

I would find a change of circumstances has been established and the decision of the trial court as to what is in the best interest of this child is sufficiently supported by the record. I would affirm the decision of the trial court.

I respectfully dissent.