Submitted on record and briefs October 18, reversed December 4, 1978

In the Matter of the Dissolution of the Marriage of
REYNOLDS, *Respondent,*
*and*
REYNOLDS, *Appellant.*
(No. 89555, CA 10629)
587 P2d 480

Wallace D. Terry, Salem, filed the brief for appellant.

Terry K. Haenny and Haenny & West, Salem, filed the brief for respondent.

Before Schwab, Chief Judge, and Thornton, Tanzer* and Buttler, Judges.

THORNTON, J.

---

*Tanzer, J., did not participate in this decision.

## THORNTON, J.

Mother appeals from a determination changing custody of her nine-year-old daughter to husband. The parties' marriage was dissolved in 1975 as a result of a default judgment in favor of father. As per his petition, custody of the daughter was awarded to mother.

Both parties remarried. Mother moved to southern California where she resided with her new husband and daughter. From August 1976 to December 1976 mother's 16-year-old stepson also resided with them, living in a camper adjacent to the family's rented two-bedroom house. He has not lived there since Christmas 1976. Mother testified that if she were given custody the stepson would not be permitted to return.[1]

Father resides with his new wife and their infant son in a two-bedroom apartment. Pursuant to a temporary custody order of December 30, 1976, and entry of a permanent modification order on March 1, 1978, the daughter has been living with her father and step-mother.

The current dispute originated in a series of events beginning in September 1976. At that time the daughter told her mother that the stepson was "doing things to her." While the mother suspected that daughter was referring to sexual conduct, she knew that daughter had a fertile imagination, had been sexually abused once earlier while living in Oregon and feared that daughter might be falsely accusing the stepson. On inquiry the stepson denied any misconduct. Under the circumstances mother determined that the stepson, active in the family's local church, should see the family minister, and that she would not again leave the children together unsupervised. But that did not end the matter. The daughter began repeating her

---

[1] The new husband testified at the hearing but was not examined on this particular point.

accusation outside of the family. First, a neighbor in October, then a sister-in-law in November told mother of the daughter's accusation. On November 15 mother took daughter to a doctor for an examination. The examination showed a partial tear of the hymen but was inconclusive as to the cause of the rupture.

On or about December 25, 1976, both children flew from southern California. The stepson flew to Washington to rejoin his mother and daughter returned to her father's house for Christmas vacation. After a short time, the daughter repeated her accusation and father took her to the Children's Services Division. The daughter has not been returned to her mother's custody since then.

■ The primary issue on appeal is whether father has demonstrated the substantial change in circumstances necessary to a change in custody. In *Niedert and Niedert,* 28 Or App 309, 313, 559 P2d 515, *rev den* (1977), we stated:

> "The change-of-circumstance rule is designed to serve two functions: to discourage repeated litigation of the same issues and, more important, to provide young children with a stable environment. * * * We have long recognized the importance of a stable and secure home life and have consequently placed a high value on the stability of parental relationships. Therefore, the rule requires a showing of some change in circumstances which makes either the benefits to be gained from a change of custody or the detriment caused by not making the change outweigh the damage done to the child who is exposed to shifting parental figures. * * * [Citations omitted.]"

*See also, Smith and Smith,* 36 Or App 461, 584 P2d 780 (1978). The trial court determined that a change in circumstances had occurred by virtue of mother's lack of concern and inattention to the situation. We disagree. Daughter had been previously molested by a neighbor boy, and neither father nor mother exhibited the kind of concern expected by the trial court. If

change in attitude may constitute a change in circumstances, it is evident that the attitude here was consistent. Nor are we persuaded mother's attitude was inappropriate. The facts are sufficient to present any parent with agonizing choices. Here, mother was faced with a child prone to fantasy and manipulation, already familiar with sexual abuse, who accused her stepbrother of misconduct. The stepbrother denied misconduct. On the horns of this particular dilemma, unbeknownst to mother, hung her right to continue custody of her daughter.

■ We do not believe that mother's decision to not immediately banish the stepson from the household was such a specific instance of parental misfeasance as to

"* * * reflect a course of conduct or pattern of inadequate care which has had or threatens to have a discernable adverse effect upon the child. * * *" *Niedert and Niedert, supra* at 314.

Of course we do not disagree that the child abuse is likely to adversely affect daughter; but it is not the issue of the child abuse with which we are here concerned. As noted above, that incident is past and unlikely to recur. We must determine whether mother's *response* was such as to indicate a lack of care. We do not believe it does. Parents having custody of children of dissolved marriages are asked to undergo constant scrutiny as no other parent. While some mistakes in judgment thus become evident, "it is doubtful that any parent's performance would appear unblemished upon such close scrutiny." *Niedert and Niedert, supra* at 314.

Assuming, however, that mother's response was less than adequate under the circumstances, we are not persuaded that father's demonstrated concern is measurably superior. Three factors are notable. First, as mentioned above, daughter has been previously molested by a neighbor boy when she had resided with both father and mother. Mother submitted an exhibit

and an uncontroverted affidavit indicating that father had been less than concerned about that incident. Second, although father consulted professional help for daughter shortly after hearing of the incident with the stepson, it appears that the only benefit of the interview with Children's Services Division was a recommendation that father institute temporary custody proceedings inasmuch as Children's Services Division did not have jurisdiction for a molestation in California. Not until preparations for the hearing were underway was a child psychologist consulted, at father's counsel's request. The child psychologist's report, dated February 23, 1977, indicates that (1) in her professional opinion the child was not fabricating the sexual abuse incident, (2) the child was not in any immediate need of additional psychological counseling and (3) the child should not be returned to an environment where she was likely to be sexually abused. Viewed chronologically, the parents' reactions are remarkably parallel. Informed in mid-September, mother obtained a medical opinion on the veracity of the report in mid-December. Informed in late December, father obtained a psychological opinion on the veracity of the report in late February.

Third, father acknowledged a conversation between father and mother just prior to the hearing in which he offered to stop the custody proceedings if mother would then engage in sexual relations with him. Confronted by mother's recollection of the conversation, husband offered that he did it to "insult my ex-wife," and that he had no intention of dropping the proceedings.

■ The record indicates that both parents love their daughter very much. Daughter has expressed at varying times different opinions on her preference of households, canceling the consideration we normally allow to such expressions, *Wolff v. Wolff*, 25 Or App 739, 550 P2d 1388 (1976), although in the course of the interview with the trial judge, which is fully reported

in the record, she stated that she would prefer to live with her mother in California. It is possible that the child's indecision is fostered by the fact that neither parent is clearly "better" despite differing parenting styles.

■ Having failed in the first instance to demonstrate a substantial change in circumstances, father should not have been awarded custody.

Finally, we direct that mother's custody of daughter be on the express condition that the stepson not be allowed to live or be in the family home while daughter is residing there.

It is indeed unfortunate that in an attempt to correct untimely disruptions in a child's environment we must force another disruption. That is, however, the only possible method of preserving the parties' meaningful right to appeal under currently authorized procedures. *Niedert and Niedert, supra* at 316.

Reversed.