In the Matter of the Marriage of

Mark A. SOUTHWORTH,
*Respondent,*

*and*

Debra L. SOUTHWORTH,
*Appellant.*

(89-DO-0384-TM; CA A67932)

835 P2d 122

Richard E. Forcum, Bend, argued the cause for appellant. With him on the brief were Paul J. Speck and Forcum & Speck, Bend.

Myer Avedovech, Bend, argued the cause for respondent. With him on the brief was Babb, Avedovech & Erwin, Bend.

Before Richardson, Presiding Judge, and Deits and Riggs, Judges.

RICHARDSON, P. J.

Riggs, J., concurring in part; dissenting in part.

## RICHARDSON, P. J.

Mother appeals from a judgment that held her in contempt and modified the dissolution judgment to award child custody to father.[1] We reverse.

The dissolution judgment entered on July 17, 1990, awarded custody of the parties' minor child to mother. On August 27, 1990, father obtained an order requiring mother to show cause why she should not be held in contempt for violating the visitation provisions of the dissolution judgment and why he should not be awarded custody of and support for the parties' child. In the show cause hearing, the trial court found mother in contempt and imposed a fine of $100. It also modified the dissolution judgment to award custody of and support for the child to father.

Mother first assigns error to the judgment holding her in contempt for violating the visitation provisions of the dissolution judgment. In its decision, the trial court said:

"Apparently the visitation went all right until the mother removed herself from what had previously been the marital residence and moved to the property of the Avery's. There was no notice at that time given to the husband of where she was, he apparently located — I use husband and wife, I'm sorry, that's not accurate, but the father located her about the middle of July and was refused a visitation, perhaps the mother was unaware at that time of the decree. There wasn't any visitation until August 17th, the mother advised the father to pick the child up at the boyfriend's and I believe that was the weekend that the chicken pox surfaced and I think that that's accurate that the child had the chicken pox. There was some confusion about the visitation the next weekend. The next visitation was the first one scheduled in September, which the mother's current friend, Mr. Jefferies, set up the dinner meeting before that and then or at least prior to that time the father was told that he had to pick up and return the child to Mr. Jefferies['] residence rather than conform to the terms of the decree. The wife then moved — the mother moved then again from the Avery place and in November gave a letter with her address, which apparently was difficult to locate. The evidence was that she's house sitting there for

[1] Mother had obtained an order requiring father to show cause why he should not be held in contempt for failure to pay child support. The trial court issued a judgment of dismissal on that order, from which mother does not appeal.

some other people and there was an inability for a lengthy period of time then for the father to make direct contact with the mother and apparently whatever visitations occurred continued through the auspices of Mr. Jefferies. I think that the mother has demonstrated a pretty much of a lack of cooperation with regard to this visitation, she's refused absolutely to abide by some parts of the visitation requirements concerning the picking up and returning the child to her premises and has forced the father to deal with someone who he shouldn't have to deal with in conjunction with visitation. I find that the mother is in contempt with regard to this visitation matter."

■ "[A] *prima facie* case of contempt is shown by proof of (1) the existence of a valid court order; (2) the contemnor's knowledge of the order; and (3) voluntary noncompliance with the order." *Couey and Couey*, 312 Or 302, 306, 821 P2d 1086 (1991). An order finding contempt must be supported by specific findings of fact, including a finding that the violation was "willful." 312 Or at 304. "Willfully" means that the contemnor acted with bad intent. 312 Or at 306. We review to determine if the evidence is sufficient to support a finding that there was a violation and that it was willful.[2] 312 Or at 304 (quoting *State ex rel Oregon State Bar v. Wright*, 280 Or 713, 715, 573 P2d 294 (1977)).

■■ Mother argues that the trial court erred, because it based its decision in part on conduct that occurred before the dissolution judgment was entered on July 17, 1990. Facts that occurred before that date cannot support the court's contempt finding, because until then a valid court order did not exist. Mother moved from the marital residence at the end of June, 1990. The fact that she did not give father notice of

---

[2] The parties do not address whether the penalty was imposed for civil or criminal contempt. This case was tried before the 1991 amendments to ORS 33.045, which changed the categories of contempt. Under the former statutes, contempt was criminal if the penalty was imposed as punishment for a completed contempt that could no longer be avoided by belated compliance and was civil if the penalty was imposed in order to compel compliance with an order and would end as soon as the contemptnor complied. *State v. Thompson*, 294 Or 528, 531, 659 P2d 383 (1983); *see also French and French*, 112 Or App 138, 827 P2d 944 (1992). This case appears to be a criminal contempt case. Therefore, we apply the beyond a reasonable doubt standard of proof in determining whether the evidence is sufficient to support the trial court's findings. *Hicks v. Feiock*, 485 US 624, 108 S Ct 1423, 99 L Ed 2d 721 (1988).

her whereabouts at that time should not have been considered by the trial court.

Mother also argues that her other actions were not "willful" violations of the visitation provisions.[3] She is entitled to the presumption that she acted in good faith. *State ex rel Oregon State Bar v. Wright, supra*, 280 Or at 720. Her behavior has not been a model of cooperation; however, after reviewing the record, we conclude that the evidence is insufficient to support the necessary finding that her violation of the dissolution judgment was willful.

Mother's refusals to allow the earliest attempted visitations were not contemptuous because, at the time of the first attempt, she was unaware of the judgment and, at the time of the next, the child had chicken pox. Father has had regularly scheduled visits since that time.[4]

Mother has failed to comply with the provision that the "[n]oncustodial parent shall pick the child up from the front steps of the custodial residence" and "[r]eturn * * * the child to the front step[s] of the custodial residence." However, her failure appears to be a consequence of father's misconduct, rather than a willful violation on her part. On one occasion when father came to pick up the child for a visit, he tore down part of a wall, threw things and pulled wiring out of a fuse box. His behavior frightened mother, the parties' child and several other children who were in mother's care at the time. When he refused to stop or to leave the premises, mother locked herself and the children in the house and called the police. On the first attempted visitation after the dissolution judgment was entered, father arrived unexpectedly,

_____

[3] The trial court did not find that mother·acted willfully. Neither did it specify the statutory basis for the finding of contempt, which is also required. *Goldschmidt and Goldschmidt*, 86 Or App 610, 615, 740 P2d 206, *rev den* 304 Or 547 (1987). Usually, the lack of a finding of willfulness and the failure to specify the statutory basis would require us to vacate the contempt judgment and remand for the trial court to make the necessary findings and set out its statutory authority. However, mother did not raise these issues below and does not assign them as error. Therefore, we do not address them. *See Zollman v. Lewis*, 101 Or App 435, 438, 790 P2d 559 (1990); *but see Connelly and Connelly*, 90 Or App 484, 488, 752 P2d 1258 (1988).

[4] Two exceptions to the regular schedule were in evidence. Mother offered father an additional evening visitation just before his first scheduled weekend with the child, and father accepted. Also, father refused to take the child on the last weekend in September, because he misunderstood the visitation provisions.

swore at mother and tried to pull the child from her arms. After that incident, the owners of the property where mother resided said that he was no longer welcome to enter the property. In the light of those events, mother's reluctance to deal directly with father is understandable. The current arrangements are a reasonable attempt to comply with the spirit, if not the letter, of the visitation provisions. We do not understand father's insistence that *mother* be held in contempt for making arrangements that allow him to continue regularly scheduled visitations, when *his* behavior made it impossible for him to pick up the child at mother's doorstep.

The other facts recited by the trial court show no violations of any provision of the dissolution judgment. The judgment of contempt is reversed.

Mother's second and third assignments of error must be considered together. She claims that the trial court erred in finding a change of circumstances sufficient to warrant a change of custody. We review *de novo.* "The moving party in a custody proceeding must show that circumstances relevant to either party's capacity to care for the children have substantially changed *since* the most recent custodial order." *Stevens and Stevens,* 107 Or App 137, 139, 810 P2d 1334, *rev den* 312 Or 81 (1991) (emphasis in original); *Ortiz and Ortiz,* 310 Or 644, 649, 801 P2d 767 (1990). The rule requiring a substantial change of circumstances is designed to discourage repeated litigation over custody and to provide young children with a stable environment and avoid the damage done to a child who is exposed to shifting parental figures. *Ortiz and Ortiz, supra,* 310 Or at 649; *Poulson and Poulson,* 70 Or App 505, 508, 690 P2d 526 (1984), *rev den* 298 Or 705 (1985).

The trial court found that mother's failure to cooperate with the visitation provisions and her refusal to communicate with father created a change of circumstances that was not contemplated at the time of the dissolution. The only ongoing "violation" of the visitation provisions is mother's failure to comply with the requirement that father pick up and return the child at mother's front steps. As we have said above, her failure is related to misbehavior by father when he has come to pick up the child. Nevertheless, except for the first two attempted visitations, when mother was unaware of the judgment and when the child had chicken pox, mother has

arranged and father has had regularly scheduled visitations,[5] and we fail to see how mother's failure to comply with the pick up and return requirement has changed the circumstances.

Although mother is reluctant to communicate directly with father, and her reluctance is also related to father's misbehavior, she does communicate through an intermediary and visitation has proceeded without any significant problem. Father may be disgruntled at having to communicate through an intermediary, especially an intermediary who is mother's boyfriend, but there is no evidence that the arrangement has affected the child's welfare to any degree. Although aggravated interference with visitation may justify a change of custody, *see Birge and Birge*, 34 Or App 581, 579 P2d 297 (1978), the visitation problems in this case, at this point, do not establish a change of circumstances substantial enough to warrant a change of custody.

■     The trial court also found a change of circumstances not contemplated at the time of dissolution based on nude, non-sexual physical contact between the parties' child and mother's boyfriend. The judgment reads:

> "The Court further finds that there was physical contact between Respondent's boyfriend, Mr. Jeffries, [sic] and the parties' child while both nude. This fact was unknown to the Court or to Petitioner at the time of the dissolution hearing, and as a result of Exhibit 5, a photograph which was developed in March, 1990, the Court finds that this nude contact between Respondent's boyfriend and the parties' child was ongoing behavior since March 1990, if not before that time. The Respondent testified that she had numerous nude photographs of family members, and according to Respondent 'nudity was no big deal.' It was not contemplated by the Court at the time of the dissolution hearing that Respondent would condone this type of contact between the parties' child and Mr. Jeffries, [sic] her boyfriend, and fail to recognize the impropriety of such conduct."

Although there is no allegation or evidence of sexual abuse, the physical contact between the child and mother's boyfriend is troubling. We understand the evidence to be that family nudity is part of mother's lifestyle. The question before us is not whether we condone the lifestyle, but whether

---

[5] *See* n 2, *supra*.

it is a change of circumstances enough to warrant a change in custody.

■ ■ In order to determine whether there has been a change of circumstances since the most recent custodial order, we look at what the circumstances were at the time of that order. Events that took place before that order are inadmissible to establish a change of circumstances; however, once a change of circumstances has been established, those events may be considered in determining the best interests of the child. *Stevens and Stevens, supra,* 107 Or App at 140. The dissolution hearing was held on May 3, 1990. Although the judge found at the show cause hearing that the conduct had been going on since at least March, 1990, he also stated that he was unaware of it at the time of the dissolution hearing. However, father and his attorney were aware of mother's conduct before the dissolution judgment was signed and entered, and they did not bring the information to the court's attention.[6] The record contains motions and other communications between father's attorney and the trial court on other issues after the hearing on May 3 and before the judgment was signed and entered. If father thought that the evidence was relevant to mother's capacity to care for their child, he should have brought it to the court's attention, instead of reserving it for use in relitigating the issue of custody.

Because we do not find a substantial change of circumstances warranting a change of custody, we need not reach mother's other assignments of error.

Reversed. Costs to wife.

**RIGGS, J.,** concurring in part; dissenting in part.

I agree with the majority that there is not a substantial change of circumstances warranting a change of custody but, on *de novo* review, I believe that mother's continued custody requires imposition of certain conditions.

---

[6] *Father found the photograph of mother's boyfriend bathing the child on the last day of June or the first day of July, 1990, and took it to his attorney the next day. The attorney submitted the proposed dissolution judgment to the trial court sometime after June 27, 1990, the judge signed it on July 12, 1990, and it was entered on July 17, 1990.*

When the trial judge modified the dissolution judgment to award father custody, he imposed conditions on mother's visitation. He ordered that mother's boyfriend "shall not be allowed to bathe or shower the parties' minor child" and that, "whenever [he] is in the presence of the minor child, he must be fully clothed." Those conditions could have been imposed without a change of custody and without disrupting the child's stability. The majority acknowledges that it finds "the physical contact between the child and mother's boyfriend is troubling," 113 Or App at 613, but imposes no conditions as a safeguard. Although I agree that, on this record, a change of custody is not warranted, the trial judge's concern and the possibility that mother does not fully understand the inappropriateness of her conduct persuade me that her continued custody should be subject to conditions.

We may place conditions on custody when necessary to protect the best interests of the child, when the evidence, although not warranting a change of custody, is nevertheless troubling and presents the likelihood that the child might be exposed to seriously inappropriate sexual misconduct. *See, e.g., Reynolds and Reynolds*, 37 Or App 291, 297, 587 P2d 480 (1978); *A. v. A.*, 15 Or App 353, 359, 514 P2d 358 (1973), *rev den* (1974). The condition imposed by the trial court should be imposed by this court, even though we reach a different result on custody. I would not award costs to either party.

For these reasons, I concur in part and dissent in part.