Argued and submitted April 25, motion to dismiss denied; reversed and
remanded December 18, 2013

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

DENNIS MARK LANGFORD,
*Defendant-Appellant.*

Douglas County Circuit Court
10CR2589CT; A148793

317 P3d 905

Lindsey J. Burrows, Deputy Public Defender, argued the cause for appellant. With her on the briefs was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Justice J. Rillera, Assistant Attorney General, argued the cause for respondent. With her on the briefs were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

Before Schuman, Presiding Judge, and Duncan, Judge, and Nakamoto, Judge.

SCHUMAN, P. J.

**SCHUMAN, P. J.**

Defendant appeals from a judgment of punitive contempt based on a finding that he voluntarily failed to comply with the terms of a 2010 sentence that ordered him to perform 10 days of community service.[1] Specifically, the contempt court found that defendant had been assigned to perform his 10 days of service with a work crew and that defendant had refused to do so. On appeal, defendant argues that the contempt court erred because, while the 2010 sentence required him to perform some form of community service, which he was willing and able to do, it also exempted him from being assigned to a work crew, which he was not. The state responds that a work crew is one form of community service, and that, by requiring 10 days of community service, the trial court gave officials the discretion to specify assignment to a work crew. Thus, according to the state, by refusing to accept his assignment to a work crew, defendant also refused to do community service. Alternatively, the state contends that the contempt court found as fact that defendant refused to perform not only work crew, but all forms of community service. For the reasons that follow, we conclude, first, that the contempt court erred in concluding that the trial court's sentence encompassed a requirement that defendant perform work crew; second, that evidence in the record could support a finding that defendant refused to perform any community service; but, third, that the contempt court never reached that question. We therefore reverse and remand for a new trial.

We state the facts in the light most favorable to the state. *State v. Hall*, 327 Or 568, 570, 966 P2d 208 (1998). In December 2010, defendant was sentenced to 10 days of community service. In imposing that sentence, the court used a standardized check-the-box community service judgment form. That form read:

"The defendant in this case has been convicted of an offense and ordered to successfully complete:

---

[1] For purposes of clarity, we refer to the court that ordered defendant to perform 10 days of community service as the "trial court" and the court that found defendant in contempt for violating that order as the "contempt court."

"___ Community Service as an alternative to payment of a fine or jail sentence.

"___ Community Service as an additional condition of your sentence.

"___ Work Crew as an alternative to payment of a fine or jail sentence.

"___ Work Crew as an additional condition of your sentence."

Further down the page, the form instructs, "[R]eport within 14 days to the Douglas County Work Crew Manager, Room 213, Courthouse. Defendant shall complete ___ days of work crew/community service as scheduled by the Work Crew Manager."

In this case, the trial court placed an "X" next to the "Community Service as an additional condition of your sentence" option. The other options were left blank. The court also marked the instructions further down the page by writing the number "10" in the space provided before "days of work crew/community service." The court also crossed out the words "work crew," leaving the words "community service" unaltered, so that the sentence read, "Defendant shall complete 10 days of ~~work crew~~/community service."

The parties disagree about what happened next. According to the state, when defendant reported to the work crew manager, he refused to do any form of community service. In the words of the manager, defendant told office staff that he was "[u]nable to work. He said he was unable to do anything." According to defendant, he offered to do other forms of community service but was given only the option of working on the work crew. In accordance with our standard of review, we accept the state's version. *State v. Cervantes*, 319 Or 121, 125, 873 P2d 316 (1994), *overruled on other grounds by State v. Mills*, 354 Or 350, 307 P3d 531 (2013). In any event, defendant was subsequently summoned to court to face a complaint alleging that he was in contempt for violating the trial court's order.

At the subsequent hearing, defendant testified that he had specifically refused to report to the work crew because he had a detached retina, and his doctors wanted

him to protect his eye as much as possible. That testimony led to the following exchange with the prosecutor:

"Q: Okay. And how long has this medical condition been a part of your life?

"A: Approximately two years.

"Q: Okay. So prior to the date—like, the date that [the trial court] ordered you to do [community service], there was a medical condition?

"A: Yes.

"*****

"Q: Okay. And you didn't mention that to [the trial court], did you?

"A: I mentioned it to my lawyer and that's why the community service was, you know, negotiated. I'm sure it was with you.

"Q: Sure, yeah.

"A: And that's why we went with community service instead of work crew."

At the close of the hearing, the state urged the court to disregard defendant's suggestion that the work crew manager "made it impossible or put impediments in [defendant's] way preventing him from doing what he was obligated to do under the terms of the order." The state emphasized the manager's testimony that defendant "said he wasn't able to do anything," and concluded by arguing that defendant "has made no effort to do the community service."

Defendant's counsel began his closing argument by asking the court to "follow the order that was signed *** on 12/1 of '10, and that's Defendant's Exhibit 101." The following exchange then occurred:

"THE COURT: You haven't offered 101. You never offered it. You had [defendant] identify it. You never offered it.

"[DEFENSE COUNSEL]: Okay. Well, that was what we talked to [defendant] about, where he testified that [the trial court] had ordered for it to be work—or ordered for

it to be community service. Then on that day [defendant] appeared in room 213 and offered to do community service.

"[The work crew manager's] office then found him in contempt and you can see in Exhibit 102 that it says that he's unable to medically work. And then on the second page he's terminated from work crew and unable to work. It does not discuss community service. So the state is trying to hold [defendant] in contempt for not doing work crew when he was ordered community service."

Ultimately, the contempt court took judicial notice of the order at issue. The court found defendant in contempt, reasoning that

"[c]ommunity service encompasses work crew itself and it leaves the work crew director the authority to assign people to community—more general community service or to work crew if the Judge assigns one to complete work crew, they're to complete work crew. If they're assigned * * * to complete community service that could include work crew. It's up to the community service director and the work crew supervisors to * * * assign them.

"And in this case the Court finds that [defendant] didn't want to do work crew and didn't—refused, and that it's not up to him to say, well, I'll do this but I won't do this."

The court then ordered defendant to complete a total of 12 days of service with the work crew. Additionally, the contempt court assessed defendant supervision fees to be paid to the community service/work crew coordinator. Defendant completed his required service on July 1. Additionally, it appears he worked additional hours in lieu of paying the supervision fees.

Before reaching the merits of defendant's appeal, we must decide several threshold issues. The state argues that, because defendant has served 12 days of community service, the case is moot. A case is moot if "resolving the merits of a claim will have no practical effect on the rights of the parties." *Corey v. DLCD*, 344 Or 457, 464, 184 P3d 1109 (2008). We have held, however, that, when a defendant challenges a punitive sanction for contempt, "the sanction having been served does not render the appeal moot." *State v. Hauskins*, 251 Or App 34, 38-39, 281 P3d 669 (2012). This

is so because a punitive contempt sanction "carries a collateral consequence of a stigma that is analogous to a criminal conviction." *Id.* The state attempts to distinguish *Hauskins* on the basis that, in that case, the defendant received a punitive contempt sanction of confinement, whereas here, defendant's sanction was assignment to the work crew. We find that argument unpersuasive. Although we emphasized in *Hauskins* that a punitive sanction of confinement was a critical factor in deciding whether a punitive contempt case became moot when the sanction had been completed, *id.* at 39, we did not hold that confinement was the only sanction that imposed a stigmatizing collateral consequence. We added that we were "particularly persuaded by the fact that, in the context of punitive contempt, the statutes *authorize* a sanction as punishment for past conduct and for a definite period of confinement of up to six months." *Id.* (emphasis added). Thus, the fact that the punitive contempt statute *authorizes* confinement is important, regardless of whether that sanction is imposed in any particular case. We also noted that, in the context of punitive contempt, all of "the procedures applicable to a criminal proceeding (except the right to a jury trial) apply." *Id.* That is true whether confinement is ordered or not. Finally, assignment to a work crew arguably carries with it a social stigma even greater than confinement, because work crew is served in view of the general public. In sum, we conclude that this case is not moot.

The state also argues that one of defendant's arguments is not preserved because defendant "did not object or offer any argument to contradict the [contempt] court's belief that work crew was a subset of community service." On that basis, the state insists that defendant never raised the argument that "the [contempt] court erroneously believed that work crew was a subset of community service." However, not only did defendant make that argument below, it was *the* argument that he made below. Throughout the hearing, defendant argued, both in person and through his counsel, that the state was trying to find him "in contempt for not doing work crew" even though the 2010 order assigned him to do community service. Defendant's argument was clearly preserved. *See State v. Trivitt*, 247 Or App 199, 201 n 1, 268 P3d 765 (2011) (holding that, by arguing "that there was

legally insufficient evidence that her conduct was a violation of [a court] order," defendant preserved that issue for the purposes of her appeal).

Finally, we must determine the correct standard of review. When a defendant argues that there was insufficient evidence to find that the defendant violated a court order, we proceed as though we were reviewing the denial of a motion for a judgment of acquittal. *See id.* (so doing). Typically, that means we "determine whether a rational trier of fact, making reasonable inferences, could have found the essential elements of the crime proved beyond a reasonable doubt." *Hall*, 327 Or at 570. We follow a slightly different standard, however, when the dispute is not about whether there is sufficient evidence to support a finding that all essential elements were proved, but is a dispute, instead, about what the elements of the underlying crime actually are. In such cases, we review the trial record for errors of law. *State v. Barboe*, 253 Or App 367, 380-81, 290 P3d 833 (2012), *rev den*, 353 Or 714 (2013); *State v. Jaha*, 118 Or App 497, 501, 848 P2d 622 (1993). Here, the central dispute is whether defendant's refusal to undertake work crew as a form of community service violated the trial court's order—that is, the dispute concerns what the elements of the trial court's order were. We therefore review for legal error the contempt court's conclusion that the trial court's order authorized assignment of defendant to a work crew, or, on the other hand, whether it was limited to other forms of community service.

We now turn to that question. When the state seeks to impose a punitive sanction for contempt, it must prove beyond a reasonable doubt "that a valid court order exists, that the defendant knew of the order, and that the defendant voluntarily failed to comply with it." *Frady v. Frady*, 185 Or App 245, 248, 58 P3d 849 (2002). In this case, the contempt court determined that defendant voluntarily failed to comply with the 2010 trial court order because he refused to accept his assignment to the work crew. Defendant argues, however, that that order required him to do community service and specifically exempted him from being assigned to the work crew. Thus, in this case, deciding whether defendant "voluntarily failed to comply" requires us to determine

the scope of the 2010 order. For the following reasons, we conclude that defendant's interpretation of the order is correct; the order unambiguously exempted him from doing work crew.

First, as noted above, the order itself makes a distinction between "Community Service" and "Work Crew":

"The defendant in this case has been convicted of an offense and ordered to successfully complete:

"___ Community Service as an alternative to payment of a fine or jail sentence.

"___ Community Service as an additional condition of your sentence.

"___ Work Crew as an alternative to payment of a fine or jail sentence.

"___ Work Crew as an additional condition of your sentence."[2]

The form, then, most logically can be read as distinguishing between work crew and community service: A sanction is either one or the other. If work crew were a subset of community service, we would expect the options to be "Community Service Other Than Work Crew" and "Community Service: Work Crew," or, perhaps, "Community Service" with a list of optional *forms* of community service listed below.[3]

Second, in this case, the trial court specifically crossed out the words "work crew" in the part of the form reading, "Defendant shall complete ___ days of work crew/community service as scheduled by the Work Crew Manager." The order specifies that defendant is to perform 10 days of "work crew/community service." Crossing out the words "work crew," therefore, is clear evidence that the court intended to deny the work crew manager the authority to

---

[2] The distinction between an assignment that is "an alternative to payment of a fine or jail sentence" and an assignment that is "an additional condition of [the] sentence" is based in statute. ORS 137.128(1) ("A judge may sentence an offender to community service either as an alternative to incarceration or fine or probation, or as a condition of probation.").

[3] *See* ORS 137.126(1) (defining community service generally as "uncompensated labor for an agency whose purpose is to enhance physical or mental stability, environmental quality or the social welfare").

assign defendant to work crew. In sum, the court's selection of the "Community Service as an additional condition of your sentence" option, combined with its decision *not* to check either of the "Work Crew" boxes and its striking out the words "work crew," demonstrate that the trial court intended to exempt defendant from being assigned to work crew.

Having determined the scope of the 2010 order, we now address the question whether the contempt court correctly determined that defendant "voluntarily failed to comply" with that order. More specifically, we address the state's argument that, even if the order excused defendant from work crew, it nonetheless ordered him to perform community service, and he did not do so. Defendant, for his part, asserts that he volunteered to perform other kinds of community service, but the work crew manager did not permit him to do so.

As an initial matter, we determine that there is evidence in the record from which a rational trier of fact could determine that defendant did not perform, and did not volunteer to perform, any community service. At the contempt hearing, the work crew manager testified that defendant had refused to perform any type of community service. There is also contrary evidence. According to defendant, the contempt court found that defendant's position was not that he refused to perform *any* community service, but that he could not pick and choose which kind he would perform and which kind he would not; "[I]t's not up to him to say, * * * *I'll do this* but I won't do that." (Emphasis added.) Ordinarily, we would resolve this conflict in the evidence in favor of the party that prevailed below—here, the state. That general rule does not apply in this case, however, because we conclude that the contempt court did not expressly or implicitly resolve the conflicting evidence either way. Rather, the court decided the case against defendant on the single ground that work crew is a form of community service. That erroneous legal conclusion obviated the need for the court to address the state's alternative argument, and our review of the record convinces us that the court did not, in fact, address that question. The court never resolved the conflicting testimony as to whether defendant refused to do any type of community service.

We therefore conclude that the proper disposition of this case is to reverse and remand for a new trial. As we have explained, the contempt court erred in concluding that, by refusing work crew, defendant refused a form of community service and therefore was in contempt of the trial court's order. Properly understood, the trial court's order exempted defendant from work crew, so refusing to perform work crew was not contempt because it was not a voluntary failure to comply with the order. If that were the extent of our decision, defendant would be entitled to outright reversal. However, we have also determined that, as a result of its erroneous conclusion, the contempt court did not reach the potentially dispositive question of whether defendant refused to perform *all* types of community service. That unaddressed question is dispositive because, if answered in the state's favor, the contempt court's disposition is correct despite its erroneous interpretation of the trial court order, while, if answered in defendant's favor, the contempt court's disposition is error. In such a situation, the proper disposition of the case is to reverse and remand for a new trial. *Barboe*, 253 Or App at 379-81.

Motion to dismiss denied; reversed and remanded.