SHORR, J.
*412 Defendant appeals from a judgment holding him in contempt of court for violating a restraining order issued under the Family Abuse Protection Act (FAPA), ORS 107.718. He assigns error to the trial court's denial of his motion for a judgment of acquittal (MJOA) and the court's resulting finding of contempt,[1] arguing that the evidence was insufficient to establish that he had "willfully" violated the provision in the FAPA order prohibiting him from "knowingly be[ing] or stay[ing] within 500 feet" of the victim, S. We initially dismissed defendant's appeal as moot. State v. Welch , 289 Or. App. 118, 407 P.3d 895 (2017) ( Welch I ). The Supreme Court remanded the case to us for reconsideration in light of its opinion in State v. K. J. B. , 362 Or. 777, 416 P.3d 291 (2018). State v. Welch , 363 Or. 119, 421 P.3d 351 (2018) ( Welch II ). For the reasons that follow, after considering K. J. B. , we conclude that defendant's appeal is not moot. Then, turning to the merits of defendant's appeal, we affirm the denial of defendant's MJOA.
We begin with a summary of the procedural background in Welch I . As noted above, defendant was charged with contempt of *490 court for violating a FAPA order. At his contempt hearing, defendant moved for a judgment of acquittal. The trial court denied the motion and found defendant in contempt. Rather than imposing any sanctions against defendant, the court only ordered defendant to fully comply with the FAPA order going forward.
Defendant appealed and assigned error to the trial court's denial of his MJOA. One of the state's principal arguments on appeal was that defendant's appeal was moot because the court had not imposed any punitive sanctions against defendant and defendant had failed to show any probable collateral consequences that flowed purely from the judgment of contempt. Defendant countered that there was a meaningful collateral consequence, namely that contempt proceedings are inherently stigmatizing, and that judgments of contempt are appealable as a matter of law because of that inherent social stigma.
*413 We were persuaded by the state's argument. We first described how we have resolved claims of mootness in previous appeals from judgments of contempt, and specifically whether those appeals were moot due to resulting social stigma. Welch I , 289 Or. App. at 120-22, 407 P.3d 895 (citing State v. Langford , 260 Or. App. 61, 317 P.3d 905 (2013) ; State v. Hauskins , 251 Or. App. 34, 281 P.3d 669 (2012) ; State ex rel. State of Oregon v. Hawash , 230 Or. App. 427, 215 P.3d 124 (2009) ). Based on those opinions, we concluded that defendant's appeal was moot because the trial court had not imposed any sanctions or other consequences on defendant apart from reiterating the preexisting requirement that defendant must comply with the FAPA order. Id. at 122, 407 P.3d 895. We explained that
"the trial court ordered defendant to comply with the restraining order against him, which defendant had a preexisting obligation to do. The court expressly decided not to impose any sanctions or 'consequences' on defendant. Defendant has not identified how a contempt judgment that imposes no sanctions and only mandates compliance with a preexisting court order generates sufficient social stigma to save the appeal from being moot. Absent a sufficiently stigmatizing sanction, we are not aware of any collateral consequences that flow directly and solely from the judgment of contempt itself."
Id .
Defendant sought review of our decision from the Oregon Supreme Court. The Supreme Court subsequently decided K. J. B. -a case involving an appeal from an order of civil commitment that had since expired-in which it clarified how a court should address claims of mootness. The Supreme Court then remanded Welch I to us for reconsideration in light of K. J. B . Welch II , 363 Or. 119, 421 P.3d 351. Of relevance to this case, the court explained in K. J. B. that
"[t]he burden rests with the party moving for dismissal to establish that a case is moot. ***
"The moving party's burden includes the burden of establishing that any collateral consequences either do not exist or are legally insufficient. That does not mean that the moving party is required to imagine all possible *414 collateral consequences and then disprove each of them. Rather, when the moving party takes the position that a case has become moot, the responding party must identify any collateral consequences that he or she contends has the effect of producing the required practical effects of a judicial decision. At that point, the moving party must demonstrate that any of those identified collateral consequences either does not exist or is legally insufficient."
362 Or. at 785-86, 416 P.3d 291 (internal citations omitted). The court did not decide whether a social stigma attaches to an order of involuntary civil commitment and, if so, whether the stigma persists after the order has expired. Instead, the court concluded only that the state had failed to satisfy its burden to establish that the appeal was moot. As the court explained,
"the burden rests with the state to establish that any collateral consequences that petitioner has identified either do not exist or are legally insufficient. In this case, the state has done neither. It has simply asserted-without support of any kind-that *491 the social stigma of which petitioner complains does not exist. That is not adequate to establish that there are no collateral consequences of the order of civil commitment. Accordingly, the state's motion to dismiss is denied."
Id. at 789, 416 P.3d 291.
Turning to this case, we similarly conclude that the state has failed to establish that the collateral consequences identified by defendant do not exist or are legally insufficient. In its original answering brief on appeal to our court, the state simply asserted-with little support-that the stigma identified by defendant does not exist. Under the standard articulated in K. J. B. , that is not adequate to carry the state's burden to establish mootness. In its supplemental briefing on remand, the state abandons its mootness argument altogether and concedes that it cannot demonstrate that defendant's appeal is moot. We accept that concession.
We do not decide whether the state could establish, either under the circumstances of this case or any other, that an appeal from a judgment of contempt is moot. Similarly, we do not decide whether to adopt defendant's view that punitive contempt proceedings always carry significant and inherent social stigma, such that no judgment of contempt *415 can be moot for want of collateral consequences. Cf. Hawash , 230 Or. App. at 428, 215 P.3d 124 (deciding that an appeal from a judgment of contempt for failure to pay child support was moot because "appellant has not identified any collateral consequences that flow from the judgment of contempt, and we are aware of none"). We decide only that, in this case, the state did not meet its burden to establish that defendant's appeal is moot.
Having decided that defendant's appeal is not moot, we turn to the merits. When a defendant argues that there was insufficient evidence to find that he or she willfully violated a court order, we "review to determine whether the record contains evidence from which a rational trier of fact, drawing all reasonable inferences in the light most favorable to the state, could find all elements of contempt beyond a reasonable doubt." State v. Beleke , 287 Or. App. 417, 420, 403 P.3d 481, rev. den. , 362 Or. 208, 407 P.3d 814 (2017) ; see Langford , 260 Or. App. at 68, 317 P.3d 905. We recite the following facts consistently with our standard of review.
In 2014, the trial court entered a FAPA restraining order requiring that defendant "shall not knowingly be or stay within 500 feet" of S. One evening, after defendant had been served with the FAPA order, S and a friend went out to a local restaurant for dinner. Defendant was already eating dinner at the restaurant when they arrived. Defendant, who was sitting at a table on the restaurant's patio, saw S and her friend arrive at the restaurant and walk inside to the bar. S immediately saw defendant upon her arrival as well. The two women decided to wait at the bar to give defendant a chance to leave. After defendant had remained at his table for several minutes, S told the manager of the restaurant that she wanted to call the police to report defendant but that she would wait 10 to 15 minutes more before doing so. The manager asked the server to bring defendant his check and warn him that S planned to call the police. The server did so, and defendant finished his meal and paid his check in cash. The server brought defendant his change, but defendant still remained at his table. During that time, S had called the police, who dispatched an officer to the restaurant. S testified that the moment that the officer pulled up outside the restaurant, defendant got up "super fast" and *416 left. At least 15 to 20 minutes had passed from the time S arrived at the restaurant until defendant left.[2] *492 Defendant was charged with contempt of court on an information that alleged that he had violated the FAPA order by "knowingly staying within 500 feet" of S. At the close of evidence in the contempt hearing, defendant moved for a judgment of acquittal for the reasons described above. The trial court denied the motion. The court then found defendant in contempt, explaining to defendant that "[t]here was an order in place. You saw [S] come in. You knew you should have left. You didn't choose to leave. * * * Why you chose to take your time, it's unclear from the court's perspective."
A person can be found in contempt of court if the state initiates a contempt proceeding under ORS 33.065(2)[3] and proves that the person "willfully" acted with "disobedience of, resistance to or obstruction of the court's * * * orders," ORS 33.015(2)(b)[4] , including a valid FAPA order. A *417 prima facie case of contempt is shown by (1) proof of an existing, valid court order, (2) the contemnor's knowledge of the order, and (3) the contemnor's willful noncompliance with that order. State v. Nicholson , 282 Or. App. 51, 61, 383 P.3d 977 (2016) (citing Couey and Couey , 312 Or. 302, 306, 821 P.2d 1086 (1991) ). Doing or failing to do something "willfully" in that context means acting "intentionally and with knowledge that the act or omission was forbidden conduct." Id. at 62, 383 P.3d 977. Thus, a trier of fact "can infer a willful mental state from facts showing a knowing violation." Elizabeth Lofts Condo. Owners' v. Victaulic Co. , 293 Or. App. 572, 580, 428 P.3d 952 (2018) ; see also State v. Crombie , 267 Or. App. 705, 710, 341 P.3d 841 (2014) ("[I]n order to prove a willful violation of the order, the state need show only the existence of a valid order and that defendant knew about it and chose not to comply with it."). If the trial court finds that the defendant committed a willful violation, it is not required to make a separate finding that the defendant acted with "bad intent" in order to hold him or her in contempt. Couey , 312 Or. at 306, 821 P.2d 1086.
Here, the state established that there was a valid FAPA order and that defendant knew of the order. Defendant does not dispute those elements. Instead, defendant contends, as he did before the trial court, that no reasonable trier of fact could find based on the evidence that he willfully disobeyed the terms of the FAPA order.[5] We disagree. Defendant perhaps could have complied with the FAPA order even if he did not immediately leave the restaurant when S arrived. A brief delay was likely unavoidable under the circumstances of this case. But, even accepting *418 the shortest estimate of how long defendant remained after S's arrival-15 minutes-that delay, when considered along with the other facts provided above, allowed a rational trier of fact to infer that defendant willfully prolonged his departure longer than was reasonable or necessary under the circumstances. *493 To reiterate, there is evidence from which a rational trier of fact could find that, after S arrived at the restaurant, defendant noticed her, finished his meal, waited for a server to bring his check and change, and ultimately did not get up from his table and leave the restaurant until the precise moment that the police arrived in response to S's phone call. At that point, defendant got up "super fast" and left. A rational trier of fact could find that defendant willfully failed to comply with the FAPA order in light of those facts.
Defendant cites Southworth and Southworth , 113 Or. App. 607, 611, 835 P.2d 122 (1992), for the proposition that a person who makes reasonable efforts to comply with a court order cannot be said to have willfully violated the order. Defendant argues that the trial court should have granted his MJOA because he made reasonable efforts to leave the restaurant once S arrived, and he is entitled to the presumption that he acted in good faith. In Southworth , we reversed a judgment of contempt against a mother for violation of the visitation provisions of a dissolution judgment that provided that the father would pick up and drop off the child at the mother's doorstep. On multiple occasions, the father had behaved violently when he arrived at the mother's home, which prompted the owners of the property to tell the mother that the father was no longer allowed to enter the property. The mother subsequently arranged to pick up and drop off the child elsewhere. The trial court held mother in contempt for her unilateral decision to change the pick-up and drop-off location. On review, we concluded that the mother had not willfully violated the judgment and reversed. We explained that the father's behavior had made it "impossible" for the mother to comply with the precise terms of the dissolution judgment and determined that the mother had made a "reasonable attempt to comply with the spirit, if not the letter, of the visitation provisions." Id. at 612, 835 P.2d 122.
*419 Southworth is distinguishable from this case and does not lead us to conclude that the trial court erred by denying defendant's MJOA. Unlike in Southworth , where the mother's failure to comply with the precise terms of the visitation provisions was a "consequence of [the] father's misconduct," id. at 611, 835 P.2d 122, here, defendant's failure to more promptly leave the restaurant does not appear to have been the consequence of any other person's behavior. Rather, the evidence supports a finding that defendant chose to remain at the restaurant on his own accord and, in doing so, did not make a reasonable or good-faith attempt to comply with either the spirit or the letter of the FAPA order.
In sum, we conclude that a reasonable trier of fact could have found that defendant willfully violated the terms of the FAPA order. Accordingly, the trial court did not err when it denied defendant's MJOA.
Affirmed.

Defendant captioned his motion in the trial court as an MJOA. For simplicity, we use defendant's label throughout.

S and her friend both testified at the contempt hearing that 40 to 45 minutes had elapsed between when they arrived and defendant left. By contrast, the restaurant manager testified that only 15 to 20 minutes had passed. The trial court found the manager's testimony to be the "most believable," but did not make an express finding regarding how long defendant remained at the restaurant after S arrived. Instead, the court only found that there was "a waiting period of time" during which defendant had an "opportunity to leave." We presume that the court decided that defendant remained at the restaurant for at least 15 to 20 minutes, and, as discussed below, do not need to resolve whether defendant waited up to 40 or 45 minutes. See State v. Barboe , 253 Or. App. 367, 380, 290 P.3d 833 (2012), rev. den. , 353 Or. 714, 303 P.3d 943 (2013) ("Where the trial court does not make findings of fact on all of the issues and there is evidence based upon which particular factual issues could be decided in more than one way, 'we will presume that the facts were decided in a manner consistent with the trial court's ultimate conclusion.' " (Quoting Ball v. Gladden , 250 Or. 485, 487, 443 P.2d 621 (1968).)).

ORS 33.065(2) provides:
"The following persons may initiate the proceeding [to impose punitive sanctions for contempt] by an accusatory instrument charging a person with contempt of court and seeking a punitive sanction:
"(a) A city attorney.
"(b) A district attorney.
"(c) The Attorney General."

ORS 33.015(2) provides:
" 'Contempt of court' means the following acts, done willfully:
"(a) Misconduct in the presence of the court that interferes with a court proceeding or with the administration of justice, or that impairs the respect due the court.
"(b) Disobedience of, resistance to or obstruction of the court's authority, process, orders or judgments.
"(c) Refusal as a witness to appear, be sworn or answer a question contrary to an order of the court.
"(d) Refusal to produce a record, document or other object contrary to an order of the court.
"(e) Violation of a statutory provision that specifically subjects the person to the contempt power of the court."

Defendant also contends, as part of a second assignment of error, that the trial court applied the wrong legal standard when it determined that defendant had violated the FAPA order. Defendant did not preserve that argument for appeal, and we decline defendant's invitation to conduct plain-error review.