Argued and submitted July 9, 2019; portion of judgment requiring defendant to pay attorney fees reversed, otherwise affirmed July 1; petition for review denied October 1, 2020 (367 Or 115)

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

JUAN ANTONIO GUZMAN-VERA,
*Defendant-Appellant.*

Washington County Circuit Court
17CN06363; A166866

469 P3d 842

Defendant appeals a judgment of punitive contempt for violating a restraining order issued under the Family Abuse Prevention Act (FAPA). In his first assignment of error, he contends that the trial court applied the wrong legal standard in finding him in contempt. The state responds that the court's finding of contempt was correct. Alternatively, the state argues that, when defendant was served with a restraining order, and consciously decided not to read that order, defendant disobeyed the restraining order. In his second assignment of error, defendant contends that the court plainly erred by requiring him to pay the cost of court-appointed counsel without determining defendant's ability to pay. Furthermore, defendant requested that the Court of Appeals exercise its discretion to correct the error. The state concedes that error and agrees with defendant that the court should exercise its discretion to correct it. *Held*: (1) The trial court did not err in determining that defendant willfully violated his restraining order. (2) The trial court did err when it imposed court-appointed attorney fees without any evidence in the record about defendant's ability to pay.

Portion of judgment requiring defendant to pay attorney fees reversed; otherwise affirmed.

Ramon A. Pagan, Judge.

Stacy M. Du Clos, Deputy Public Defender, argued the cause for appellant. Also on the briefs was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Christopher Perdue, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Lagesen, Presiding Judge, and DeVore, Judge, and James, Judge.

LAGESEN, P. J.

Portion of judgment requiring defendant to pay attorney fees reversed; otherwise affirmed.

**LAGESEN, P. J.**

Defendant appeals a judgment of punitive contempt for violating a restraining order issued under the Family Abuse Prevention Act (FAPA), ORS 107.700 to 107.735. He contends that the trial court applied the wrong legal standard in finding him in contempt and that the error entitles him to a new trial. He also contends that the court plainly erred by requiring him to pay the cost of court-appointed counsel. Accepting a concession by the state, we reverse the award of attorney fees but otherwise affirm.

The trial court did not make any explicit findings of historical fact. Accordingly, we draw our statement of facts from the trial record. Because defendant's arguments on appeal are legal and do not challenge the implicit factual findings that the court necessarily made in determining that defendant was in contempt, we presume that the trial court implicitly found the facts in the manner necessary to support its ultimate conclusion, and we state the facts in a manner consistent with that presumption. *Pereida-Alba v. Coursey*, 356 Or 654, 670-71, 342 P3d 70 (2015).

Upon his release from jail, where he had been for a few days, defendant was served with the FAPA order barring him from contact with C, with whom he had been living in an apartment. Among other things, the order prohibited him from being within 100 yards of several specific locations, the addresses of which were listed on the third page of the eight-page-long order. At the time of service, defendant, who is a native Spanish speaker, reviewed the order with a police officer and an interpreter, but they only discussed the first page of the order, and, in particular, only discussed with defendant the fact that he could not be within a certain distance of C.

After receiving the order, defendant was released from jail. Thinking that C was likely at their apartment and knowing that he could not be within a certain distance of her, defendant began walking to C's sister-in-law's home, a trailer. Defendant did not stop to read the FAPA order in full because it was late at night, because he was walking, and

because he does not "read English very well."[1] As a result, he did not see that the home he was headed for was one of the places that the FAPA order said he could not be. When he arrived, C and her sister-in-law both were present. C's sister-in-law called the police. When the responding officer arrived, he found defendant walking away from the residence but still within 100 yards of it. Defendant had the restraining order with him.

For that conduct, the state charged defendant by complaint with one count of punitive contempt. At the close of evidence, defendant argued that, because he had not yet read the part of the order barring him from being within 100 yards of the home, he did not know about the prohibition. Therefore, defendant asserted that the court could not find that he willfully violated the order, as the court was required to find him in contempt. Rejecting that argument, the trial court explained that defendant's failure to read the order did not mean he had a good faith belief that his conduct did not violate it, and did not preclude a finding that defendant's violation of the order was willful:

> "He has a restraining order in his pocket and I'm not going to find that someone who chooses not to find out what a legal document they've been served by law enforcement, when they can at least explain that it's a restraining order to them, that they don't take any action to figure out what it is, is good faith enough to deter them, because that would be an exception that swallows the rule. It would open flood gates to people not ever being enforced. Restraining orders would have no power. Somebody could say I don't read English, and so I decided not to flip to page two and then that's it, and then they could just go wherever, and so that—that's—it's total chaos. So I reject that.

> "So he did not have good faith beliefs that restraining order was not in place. He willfully violated the restraining

---

[1] Defendant testified that, after leaving the jail,

"[s]o that's when I go walking. It was pretty late at night. I didn't get a chance to read [the] paperwork because of that and as well because I don't—I cannot read English very well, so I arrived to her house where both of them were there, and that's when they called the police."

Defendant further testified that he did not know about the prohibited addresses because they were listed on the "second or third page" of the restraining order, and the officer had only read the first page to him.

order that he had. You know[,] if I go with * * * when you're handed a document[,] at that point the law presumes that you will take the steps to find out what that document means and what it does, and if you do something that's prohibited by that document, you are on the hook for it, unless there is some sort of good reason for you to have a good faith belief otherwise, which is not good here."

Thereafter, the court imposed a term of probation and ordered defendant to pay $442 in court-appointed attorney fees. Defendant appealed.

On appeal, defendant argues that the trial court erroneously applied the wrong legal standard when finding him in contempt. Relying in large part on our decision in *State v. Nicholson*, 282 Or App 51, 383 P3d 977 (2016), defendant argues that "the 'willful' requirement in the context of a contempt proceeding for violation of a restraining order requires that a defendant have knowledge, meaning actual awareness, of the existence of the order that he or she violated." That means, according to defendant, that the state had to prove that defendant knew that he was prohibited from being within 100 yards of C's sister-in-law's residence in order to find that his violation of the FAPA order was willful. Defendant argues further that the court's order reflects that it erroneously relied on a legal presumption to conclude that defendant knew that he was prohibited from going to the residence in question. Defendant also contends that the court plainly erred in imposing attorney fees absent evidence that defendant has an ability to pay them, and that we should exercise our discretion to correct that error as we have in many similar cases.

The state responds that the trial court's finding of contempt was correct. The state contends that the court implicitly found that defendant did know about the prohibition, and that that implicit finding is supported by the record and defeats defendant's argument that the court's willfulness finding was wrong. The state argues alternatively that it would "defy logic" to conclude that a person could not be found to be in contempt simply because the person chose not to review a restraining order with which he or she was served. As to the attorney fees, the state concedes that the court plainly erred in imposing attorney fees on this record

and agrees with defendant that we should exercise our discretion to correct the error for the reasons stated in *State v. Eubanks*, 296 Or App 150, 151, 437 P3d 323 (2019), and the cases collected therein.

We start with defendant's argument that the trial court applied the incorrect legal standard in finding him in contempt. As both parties recognize, to find defendant in contempt, the court had to find that defendant "willfully" acted in or with "disobedience of, resistance to or obstruction of" an order of the court, ORS 33.015(2)(b), including a valid FAPA order. *State v. Welch*, 295 Or App 410, 416, 434 P3d 488 (2018).

One way to prove that the violation of a court order is willful is by showing that a defendant, knowing that particular conduct was prohibited by the order, engaged in the prohibited conduct. *Id*. at 417. The state argues that the trial court implicitly found that that is what happened here—that defendant knew he was prohibited from going to the sister-in-law's home yet went there anyway. But the finding that defendant knew the order barred him from that address was not necessary to the court's ruling, which turned on the notion that a person could willfully violate a court order by making a choice not to read it. Because that finding was not necessary to the court's ruling, we may not presume that the court implicitly made it. *Pereida-Alba*, 356 Or at 670-71; *State v. Sherriff*, 303 Or App 638, 640, 465 P3d 288 (2020).

Proof that a person knew of the requirements of a court order, but chose not to comply with those requirements, is not the only way to prove that a person willfully disobeyed a court order—historically, anyway. Another judicially recognized path to proving the willful violation of a court order is to show that a defendant opted to take a head-in-the-sand approach to the order. *Dept. of Rev. v. Carpet Warehouse*, 296 Or 400, 407-08, 676 P2d 299 (1984). That is, willfulness can be shown through proof that the defendant knew about the order but chose to ignore it, and then failed to comply with the order's requirements in that state of elective ignorance: "A party cannot ignore a court order and then claim that the

act of ignoring it is not wilful." *Carpet Warehouse*, 296 Or at 407; *see Pamplin v. Victoria*, 138 Or App 563, 566-67, 909 P2d 1245 (1996) (concluding that an attorney who ignored discovery requests and a related court order acted willfully in not complying).[2]

In this case, as we understand the trial court's reasoning, it concluded that defendant's violation was willful because defendant had the order and knew that it was a restraining order but chose not to learn its contents. That conclusion is consistent with decisions in *Carpet Warehouse* and *Pamplin* and, for that reason, it does not appear that the court applied an erroneous legal standard in finding defendant in contempt.

We do not read *Nicholson*, on which defendant relies, to require a contrary conclusion. There, the issue was whether a person who violates a FAPA order does so willfully when the person has a subjective, good-faith belief that the order has been dismissed. *Nicholson*, 282 Or App at 62. We concluded that, under such circumstances, any violation of the order cannot, as a matter of law, qualify as willful because a "defendant who acts based on a good faith belief that a judicial order has been dismissed cannot be deemed to have acted with knowledge that it was forbidden conduct." *Id*. (internal quotation marks omitted). In reaching that conclusion, we described what it means to be willful for purposes of the contempt statutes as follows: "'[W]illfully' for purposes of ORS 33.015(2) meant, and means, intentionally and with knowledge that the act or omission was forbidden conduct." *Id*. (internal quotations marks and brackets omitted). It is that statement that defendant relies upon to argue that the state was required to prove that defendant knew that the order barred him from visiting the home in question in order to establish that his violation of the order was willful.

---

[2] Although the statute defining contempt at the time of *Carpet Warehouse* did not use the term "wilful," that element had long been established by case law. *See, e.g.*, *State ex rel Mikkelsen v. Hill*, 315 Or 452, 456-57, 847 P2d 402 (1993) ("The present contempt proceeding was brought under *former* ORS 33.010(1)(e), which defined contempt as '[d]isobedience of any lawful judgment, decree, order or process of the court.' An additional element of wilfulness was required by case law.").

Although defendant's argument follows naturally from our description in *Nicholson* of what it generally means to be willful, we do not read *Nicholson* to rule out proof of willfulness under a head-in-the-sand theory in a case that presents that issue. The court in *Nicholson* was not called upon to address the question presented here: whether a person who knows about a court order, chooses to ignore it, and then intentionally engages in conduct that violates it, acts willfully for purpose of the contempt statutes.

Rather, *Nicholson* involved a defendant who, at the time of the allegedly contemptuous conduct, had a good faith belief that she was no longer subject to a court order and, thus, had no knowledge of the *order* itself (let alone specific terms). Thus, it provided a nonexclusive definition of the term willful that was sufficient to answer the question presented there about good faith, and it stands principally for the proposition that a person who violates an order of which the person is not aware cannot willfully violate the order; it does not stand for the proposition that a person who violates an order of which the person is aware but chose to ignore can then "claim that the act of ignoring it is not willful" based on the person's choice to remain ignorant of the specifics of the order. *Carpet Warehouse*, 296 Or at 407.

Moreover, the contempt statutes recognize explicitly that "[t]he power of a court to impose a remedial or punitive sanction for contempt of court is an inherent judicial power" and that the point of the statutes is to supply "*procedures* to govern the exercise of that power." ORS 33.025(1) (emphasis added). That suggests that, in enacting the contempt statutes, the legislature did not intend to alter the substantive law of contempt or displace prior judicial decisions on what it means to willfully disobey a court order. Additionally, recognizing that a person can willfully disobey a court order by choosing to ignore a known court order and then intentionally engaging in conduct that does not comply with the order comports with our general formulation of the elements of contempt—a formulation that does not on its face require proof that a defendant knew the specific details of the order, just that the defendant knew about the order and voluntarily opted not to comply with it: "that (1) there

was a facially valid court order, (2) the defendant knew of the order, and (3) the defendant voluntarily failed to comply with the order." *State v. Graham*, 251 Or App 217, 220, 284 P3d 515 (2012).

Finally, as the trial court recognized, it would greatly weaken trial courts' ability to enforce their orders—and ensure the orderly administration of justice—if a party could avoid a finding of willful noncompliance with a court order and evade a court's exercise of its contempt power simply by electing to ignore the order rather than reading it. We see no indication that the legislature intended, in enacting the contempt statutes, to defang the judiciary's inherent contempt power in that manner. As noted, ORS 33.025(1) states explicitly that the purpose of the statutes is to define the *procedures* governing the exercise of the contempt power. For all of those reasons, we reject defendant's contention that the trial court applied an erroneous legal standard in determining that defendant acted willfully in violating the FAPA order to which he was subject, and of which he undisputedly was aware.

Defendant's remaining claim of error is that the trial court plainly erred in requiring him to pay the cost of court-appointed counsel absent evidence demonstrating that he is or may be able to pay them. The state concedes the error and also concedes that we should exercise our discretion to correct it. For the reasons articulated in *Eubanks*, we agree in full and reverse the portion of the judgment imposing attorney fees. *See* 296 Or App at 151.

Portion of judgment requiring defendant to pay attorney fees reversed; otherwise affirmed.