Argued and submitted June 15, reversed and remanded September 15, 2021

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

JOSIAH ANDREW SIMMONS,
*Defendant-Appellant.*

Marion County Circuit Court
19CR21503; A172107

499 P3d 127

Defendant appeals from a judgment for one count of punitive contempt for violating a "no contact" provision in a release agreement. In his sole assignment of error, defendant argues that the trial court erred in finding him in contempt, because, under ORS 33.015(2)(b), the trial court was required to find that he willfully disobeyed the no contact provision and, in defendant's view, the evidence was insufficient for the trial court to have made that finding. In its ruling, the trial court did not make an explicit finding about defendant's willfulness, and it is unclear whether it made an implicit finding. *Held*: Given the legal theory pursued by the state, the limited evidence in the record, and the Court of Appeals' inability to discern what finding, if any, the trial court made about defendant's willfulness, the court could not conclude that the evidence was sufficient to support a determination that defendant willfully violated the no contact provision. Had the trial court made a finding about willfulness, the evidence may have been sufficient to support a determination of contempt. Accordingly, the court reversed and remanded for a new hearing.

Reversed and remanded.

Claudia M. Burton, Judge.

Bruce A. Myers, Deputy Public Defender, argued the cause for appellant. Also on the briefs were Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Mark Kimbrell, Deputy Public Defender, Office of Public Defense Services.

Joseph Callahan, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before DeVore, Presiding Judge, and DeHoog, Judge, and Mooney, Judge.

DeVORE, P. J.

Reversed and remanded.

## DeVORE, P. J.

Defendant appeals from a judgment for one count of punitive contempt for violating a "no contact" provision in a release agreement. In his sole assignment of error, defendant argues that the trial court erred in finding him in contempt, because, under ORS 33.015(2)(b), the trial court was required to find that he willfully disobeyed the court's no-contact order and, in defendant's view, the evidence was insufficient for the court to have made that finding. For the reasons we explain below, we reverse and remand.

Most of the underlying facts are not disputed. In April 2019, the state charged defendant with strangulation constituting domestic violence, alleging that he had strangled his girlfriend, L. As part of defendant's release agreement on that charge, the trial court included a provision that required defendant to "not have direct or indirect contact, in any manner, with alleged victim[, L]." (Uppercase and boldface omitted.) In July, Keizer Police Officer Miranda responded to a complaint of a man and woman arguing with each other in a parking lot, which turned out to be defendant and L. Defendant was then charged with punitive contempt for "unlawfully and willfully disobey[ing] an order of the Marion County Circuit Court by having victim contact" on or about July 3, 2019. Defendant proceeded with a jury trial on the strangulation charge, and while the jury was deliberating, the trial court held a bench trial on the contempt charge.[1]

At defendant's jury trial on the strangulation charge, L testified that she had had contact with defendant since the alleged strangulation incident and that she had told defendant "that, you know, I'd gone down to Center for Hope and Safety. And I was clearing up the no-contact order and stuff. And that I had taken care of it and everything so I think he was under the impression that that's what had happened."[2] Officer Miranda was the only witness to

---

[1] The jury ultimately acquitted defendant of the strangulation charge, and the court entered a judgment of acquittal. That judgment is not at issue on appeal.

[2] Although L did not testify as part of the bench trial for contempt, both parties refer to her jury trial testimony in their briefs. The state argues that, even accepting L's testimony as true, we should affirm.

testify at the bench trial on the contempt charge. He testi-
fied about his encounter with defendant and L in the park-
ing lot. Prior to approaching the vehicle that they were in,
Miranda learned from dispatch that the vehicle was reg-
istered to defendant and that "he was a respondent in a
no-contact release agreement with [L] as the protected per-
son." Miranda asked defendant about the no-contact provi-
sion and defendant told him "that [L] had told him that she
had gone down to the courthouse and had the no-contact
release dropped." Miranda then asked defendant whether he
had contacted his attorney or the court to verify that infor-
mation, and defendant told Miranda that he had not done
so—he took L's word for it. Miranda then arrested defen-
dant for violating the release agreement and transported
him to jail. In addition to offering Miranda's testimony, the
state marked the release agreement as an exhibit, which
the court received into evidence.

        In its closing argument, the state argued that defen-
dant was aware of the release agreement and

> "the Defendant in this case had contact with [L] in violation
> of that release agreement. The release agreement was still
> in effect. Defendant claims allegedly that [L] said that she
> dropped it. But he took no affirmative actions and it's on
> the Defendant to—when he has a release agreement pro-
> hibiting contact to make sure that he didn't have contact
> with her. *He should've taken additional steps.* And the State
> would argue that this is a willful violation of the no-contact
> order."

(Emphasis added.) In response, defendant argued that he
did not willfully violate the no-contact provision because he
was of the belief that that order was no longer in existence.

        The trial court found defendant in contempt of
court:

> "So again there's no question that the no-contact order
> was in effect and that it was violated. *The question is
> whether the Defendant's claim that he had been told it was
> no longer in effect negates the willful element.* And I don't
> believe that it does.
>
> "First of all, no restraining order would be worth the
> paper that it's written on or the electrons that it's written

on if that was a defense to violating a restraining order because everybody can say that. 'Oh, she told me it was—it was gone.' The no-contact order clearly states above the Defendant's signature that he understands that if he violates any condition there can be a warrant for his arrest issued.

"His bail can be forwarded, he can be prosecuted for additional crimes. If you're released on a pending criminal charge and you're told that in writing, you got to know that you need to check with your lawyer before you violate a no-contact order. And again if it—if it doesn't mean that, if anybody can just say, 'Well, my girlfriend told me that the no-contact order was gone,' then there are no no-contact orders.

"They don't exist for all practical purposes. So I will find the Defendant guilty of the contempt."

(Emphasis added.)

On appeal, defendant argues that the trial court erred because ORS 33.015(2)(b) required the court to find that he had willfully disobeyed the no-contact provision, and because, in his view, the record and the trial court's ruling establish that defendant had a good faith belief that the no-contact provision had been lifted, he did not act willfully in violating the release agreement. In response, the state argues that the evidence shows that defendant willfully violated the no-contact provision of the release agreement and that the trial court did not find the facts as defendant suggests it did.

When a defendant argues that the evidence was insufficient for the court to find that he violated a court order, we proceed as if we were reviewing the denial of a motion for a judgment of acquittal. *State v. Feyko*, 290 Or App 159, 161, 414 P3d 912 (2018). "We review the denial of a motion for judgment of acquittal to determine whether, viewing the evidence in the light most favorable to the state, a rational trier of fact could have found the essential elements of the offense proved beyond a reasonable doubt." *State v. Trivitt*, 247 Or App 199, 203, 268 P3d 765 (2011) (internal quotation marks omitted). To prove punitive contempt, the state "must prove beyond a reasonable doubt that a valid court order

exists, that the defendant knew of the order, and that the defendant voluntarily failed to comply with it." *Feyko*, 290 Or App at 162 (internal quotation marks omitted); *see also* ORS 33.015(2)(b) (defining "Contempt of Court," in part, as "willfully" disobeying a court order). Here, the parties' dispute centers on the "willful" element.

Defendant relies on *State v. Nicholson*, 282 Or App 51, 383 P3d 977 (2016), as he did below, in support of his argument that his good faith belief that the no-contact provision of the release agreement had been lifted precludes a finding that he willfully violated the order. *Nicholson* concerned an alleged violation of a restraining order issued under the Family Abuse Prevention Act (FAPA). It is a case in which we described the disputed issue as whether "defendant's subjective, good faith contemporaneous understanding that the FAPA order was no longer in effect preclude[d] a determination of willful noncompliance and, hence, an adjudication of contempt." *Id*. at 56. The defendant's estranged husband, who had previously communicated that he wanted to reconcile and take a family trip, told her via email that he was at the courthouse and "in the process of" having his FAPA order dismissed. *Id*. at 52. In fact, the restraining order was not dismissed, and the defendant was subsequently arrested for violating the restraining order while she was on a weekend trip with her husband. The state argued that "regardless of defendant's subjective good faith belief, her failure to verify that the order had not been set aside rendered her noncompliance 'willful.'" *Id*. at 55. The trial court found that the defendant believed what her husband had told her; but, the court found her in contempt nonetheless, noting, in part, that the defendant had not verified that the court had signed a dismissal of the FAPA order. *Id*. at 54.

After considering the legislative history of ORS 33.015(2) and related case law, we concluded that "willfully" in that statute means "intentionally and with knowledge that the act or omission was forbidden conduct." *Id*. at 62 (brackets and internal quotation marks omitted). Under the factual circumstances in the case, we concluded that "[a] defendant who acts based on a good faith belief that a

judicial order has been dismissed cannot be deemed to have acted 'with knowledge that it was forbidden conduct'" and that the trial court's finding of the "defendant's contemporaneous, good faith belief contradicted an adjudication of contempt." *Id*.

Defendant argues that this case is like *Nicholson* and that *Nicholson* controls here. Defendant asserts that there was no dispute that he believed that the no-contact provision had been lifted, and the state's evidence established as much. Defendant also contends that the trial court implicitly found that he had that belief, because, just as in *Nicholson*, if the trial court had determined that defendant did not actually believe what L had told him, then the court's emphasis on defendant's failure to verify the order's dismissal by contacting his lawyer "would have been gratuitous." 282 Or App at 56. Therefore, according to defendant, because the record and the trial court's ruling establish that he had a good faith belief that he was allowed to have contact with L, he did not act willfully in violating the court's order.

The state argues that we should affirm because the evidence supports a finding that defendant necessarily violated the no-contact provision by having contact with L *before* L told him that she had had the restriction lifted. Defendant urges us to reject that argument, noting that the record does not contain evidence that defendant contacted L first or any evidence about who initiated contact. In any event, according to defendant, we should not affirm under the "right for the wrong reason" doctrine on the state's timing theory because the record would have developed differently had the state raised that argument below. Given the theory under which this matter was argued to the trial court, we agree with defendant's objection. *See Outdoor Media Dimensions Inc. v. State of Oregon*, 331 Or 634, 659-60, 20 P3d 180 (2001) (not considering alternative basis for affirmance when losing party might have created different record below).

The state also asserts that the record shows that the release agreement imposed a categorical prohibition on contact with L, and that the court, in using the preprinted

form, did not check the box on the form next to an option that would permit the trial court to authorize contact. The state contends that this case is distinguishable from *Nicholson* because *Nicholson* involved a FAPA order that the petitioner procured himself and had the authority to rescind, whereas, here, the release agreement did not purport to allow L to rescind the no-contact order. Defendant responds that the distinction is without a difference. Defendant argues that the trial court retained the authority to modify the no-contact provision and that, under ORS 135.250(2)(b)(A),[3] a victim can petition the court for a waiver of a no-contact condition in a release agreement. We are not persuaded by the state's argument, which was not made below, that the trial court did not have authority to modify the no-contact provision in the release agreement and that L could not have attempted to seek dismissal of that provision.

The question returns to whether the trial court made a finding regarding defendant's good faith belief. To be sure, the court *could* have made an express finding that it did not find defendant's statement to the officer to be credible, and that would be determinative. Instead, however, the court was silent about that pivotal fact of credibility. That left the potential that the court did not reach the factual issue, assuming it to be unnecessary; believed defendant had a good faith belief that the no-contact provision had been dropped, but determined that that was not a defense; or made an implicit finding that defendant's account was not credible.[4]

---

[3] ORS 135.250 pertains to general conditions in a release agreement, and provides, in part:

"(2)(a) In addition to the conditions listed in subsection (1) of this section, if the defendant is charged with an offense that also constitutes domestic violence, the court shall include as a condition of the release agreement that the defendant not contact the victim of the violence.

"(b) Notwithstanding paragraph (a) of this subsection, the court may enter an order waiving the condition that the defendant have no contact with the victim if:

"(A) The victim petitions the court for a waiver; and

"(B) The court finds, after a hearing on the petition, that waiving the condition is in the best interests of the parties and the community."

[4] Among all those possibilities, if defendant's account were disbelieved as a matter of fact, then the state's evidence presented could have been sufficient evidence to determine contempt, based on the undisputed evidence.

The state contends that the implicit finding that is most consistent with its ultimate conclusion is that the trial court discredited defendant's assertion that he had a good faith belief that the no-contact condition had been lifted at the time he made contact with L. *See Ball v. Gladden*, 250 Or 485, 487, 443 P2d 621 (1968) (we presume that a trial court resolved disputed factual issues consistently with its ultimate conclusion, provided evidence in the record supports the implicit finding). We can infer a finding of fact under *Ball*, but "only where we can deduce that the trial court's chain of reasoning must necessarily have included that fact as one of its links." *State v. Lunacolorado*, 238 Or App 691, 696, 243 P3d 125 (2010), *rev den*, 350 Or 530 (2011).

In this case, the trial court's ruling does not appear to have been predicated on whether defendant had a good faith belief or not. Rather, the court expressed its opinion—without regard to a finding about defendant's belief—that such a belief would not provide a defense. Therefore, we do not presume, as the state asserts that we should, that the trial court implicitly found that defendant did not have a subjective belief that the no-contact provision had been lifted. *See State v. Jackson*, 296 Or 430, 440, 677 P2d 21 (1984) (declining to attribute implicit factual finding to trial court when the court "never made *any* conclusions" regarding that factual issue (emphasis in original)).

That determination leaves the state with less to rely on when facing defendant's original argument that the evidence was insufficient to support a determination that he was in willful contempt of court. There is no dispute that there was a valid no-contact provision and that defendant was aware of that restriction. The evidence was that defendant told the responding officer that he believed the no-contact provision had been lifted because that is what L had told him. When asked whether he verified that information, defendant said that he took L's word for it. No evidence was presented to contradict defendant's professed belief, and, on this record, we cannot determine whether the court, as factfinder, made an implicit finding that it believed or disbelieved him. The prosecutor argued that defendant needed to do something more than just believe L and that he "should've taken additional steps." The trial court agreed

with that proposition—either as a point of law or added fact needed to prove good faith belief. In either case, that proposition is contrary to our decision in *Nicholson*.

Given the legal theory pursued by the state, the limited evidence in the record, and our inability to discern what finding, if any, the trial court made about defendant's good faith belief, we cannot conclude that the evidence was sufficient to support a determination that defendant willfully violated the no-contact provision. However, had the court made such a finding and applied the law as described above, the evidence may have been sufficient to support a determination of contempt. Accordingly, the case must be reversed and remanded for a new hearing. *See State v. McDougal*, 299 Or App 96, 100, 449 P3d 919 (2019) ("'We have consistently held that *** where factual issues pertinent to a material element of the crime remain unresolved, the proper disposition is to reverse and remand for a new trial.'" (Quoting *State v. Barboe*, 253 Or App 367, 378, 290 P3d 833 (2012), *rev den*, 353 Or 714 (2013)) (brackets omitted from *McDougal*).)); *State v. Heal*, 298 Or App 806, 808, 448 P3d 1193 (2019) (same).

Reversed and remanded.