No. 383 June 5, 2024 111

*This is a nonprecedential memorandum opinion pursuant to ORAP 10.30 and may not be cited except as provided in ORAP 10.30(1).*

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*
*v.*
RALPH HARRISON LANE III,
*Defendant-Appellant.*

Lane County Circuit Court
21CN05035, 21CN05921;
A178254 (Control), A178255

Stephen W. Morgan, Judge.

Submitted January 24, 2024.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Bruce A. Myers, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Christopher A. Perdue, Assistant Attorney General, filed the brief for respondent.

Before Aoyagi, Presiding Judge, Joyce, Assigned Judge, and Jacquot, Judge.

JOYCE, J.

Affirmed.

**JOYCE, J.**

In these consolidated cases, defendant appeals from judgments imposing punitive sanctions for three counts of contempt of court, ORS 33.015, for violating a restraining order issued under the Family Abuse Protection Act (FAPA), ORS 107.718. In two assignments of error, defendant contends that the trial court erred in finding him in punitive contempt because, in his view, the evidence was insufficient for the court to find that he willfully violated the no-contact order—an element of contempt under ORS 33.015(2). We affirm.

When a defendant argues that the evidence was insufficient for the court to find that they violated a court order, we proceed as if we were reviewing the denial of a motion for a judgment of acquittal. *State v. Simmons*, 314 Or App 507, 511, 499 P3d 127 (2021). Accordingly, we review "whether the record contains evidence from which a rational trier of fact, drawing all reasonable inferences in the light most favorable to the state, could find all elements of contempt beyond a reasonable doubt." *State v. Graham*, 251 Or App 217, 218, 284 P3d 515 (2012). "The question is not whether we believe that the defendant was in contempt, but whether the evidence is sufficient for the trier of fact to so find." *State v. Beleke*, 287 Or App 417, 420-21, 403 P3d 481, *rev den*, 362 Or 208 (2017).

Mindful of those standards of review, we turn to the facts. In September 2021, defendant's ex-wife, E, obtained a FAPA restraining order that prohibited defendant from coming within 150 feet of E's person or her residence. The order also prohibited defendant from contacting E in any way except through text messages "for parenting or child emergency" pertaining to their shared daughter, S. The court later modified the restraining order to allow defendant and E to "communicate only about the child through a parenting time app."[1]

Defendant's contempt charges stem from three separate incidents. In the first incident, he drove to E's residence

---

[1] The court modified the restraining order to allow defendant to attend certain school and sporting events for S and to clarify where E was required to park when dropping S off at defendant's apartment.

and left a cell phone for S on the front porch of E's home. In the second, defendant approached E while she was in her vehicle; during the encounter, defendant "grabbed the top of the [car] window with his hands and rattled it very, very hard," "tried the door handle," called E names, and threatened to keep S against the parenting schedule for the coming weekend. In the third incident, defendant repeatedly called and texted E through the parenting time app that he and E were to use to communicate only about S. In one text message, defendant asked E about her plans to move out of state, asking her "when were y'all planning on moving"; defendant also texted E messages like, "You are turning my world upside down yet again," "Every time I let my guard down you hit me with something else," and "Do you honestly care that little about me?"

At trial, defendant argued that the state could not meet its burden to prove beyond a reasonable doubt that he willfully violated the restraining order. Defendant maintained that he had a learning disability that interfered with his ability to understand the terms of the order. Defendant argued that his violations were not willful because, although he tried to understand the order, he did not accurately "comprehend what was and wasn't allowed by the [o]rder" when he engaged in the prohibited conduct. Instead, defendant contended that, at the time that he went to E's house, at the time that he approached E in her vehicle, and at the time that he repeatedly called and texted E, he believed that his conduct was permissible under the terms of the FAPA order. Defendant also acknowledged that he had received the order and talked to an attorney about it.

The trial court found E's testimony "credible and reliable" and also found that defendant's testimony was not "entirely credible regarding the contact issue." It then concluded that it "was clear that [defendant] understood [the FAPA order] to some degree" and that defendant did not claim that he "didn't understand the [r]estraining [o]rder in its generalities," but rather defendant seemed to be claiming that there "was some other particulars that he didn't understand." The trial court declined to find "one way or another" whether defendant had a learning disability because there

was insufficient evidence for it to do so. The trial court found defendant in contempt.

On appeal, defendant renews his argument that, because he misunderstood what conduct the FAPA order prohibited and because he acted in accordance with what he believed was permissible under the terms of the order, his violations were not willful.

"One way to prove that the violation of a court order is willful is by showing that a defendant, knowing that particular conduct was prohibited by the order, engaged in the prohibited conduct." *State v. Guzman-Vera*, 305 Or App 161, 166, 469 P3d 842, *rev den*, 367 Or 115 (2020). Another way is by showing that the defendant "opted to take a head-in-the-sand approach to the order" through evidence that the defendant knew about the order but chose to ignore it. *Id.* We have reviewed the record and conclude that the evidence is sufficient for a rational trier of fact to find beyond a reasonable doubt that defendant willfully violated the order. We address each incident in turn.

With respect to the first incident, defendant contends that, although he attempted to understand the order, at the time that he went to E's residence, he did not know that the order prohibited him from coming within 150 feet of her home; rather, defendant claims that his understanding was that it was permissible for him to come to E's front door if he "didn't knock on the door," "didn't ring the doorbell," and "didn't have a confrontation." However, the relevant portion of the FAPA order that defendant claims to have misunderstood is not a portion of the order that was susceptible to alternative interpretations. Rather, the applicable portion of the order was unambiguous in stating that defendant was "prohibited from entering, attempting to enter, or remaining in the area within 150 feet" of E's "current or future residence." In light of the clarity and simplicity of that prohibition in the order, combined with defendant's claim that he attempted to understand the order and that he had talked with an attorney about the order, a reasonable trier of fact could infer that defendant knew that the order prohibited him from being within 150 feet of E's residence at the time that he went to E's front porch to drop off an item for S.

Thus, a reasonable trier of fact could find that defendant's conduct in the first incident constituted a willful violation of the FAPA order.

As for the second incident, defendant testified that he believed that they were not "supposed to contact each other" and that E was therefore also violating the order by coming near him during the incident. Although defendant understood that he was not supposed to be near E, he still approached her while she was in her car, grabbed the car window, called E names, and threatened to keep S for longer than was permitted. That defendant may have believed that the order prohibited E from being near him as well does not negate that he had knowledge that his own conduct was prohibited under the terms of the FAPA order at the time the second incident occurred. A reasonable trier of fact could thus find that this violation of the FAPA order was done willfully.

With respect to the third incident, defendant testified that he believed that the modified FAPA order permitted him to communicate with E through the parenting time app "[a]s long as it had to do with [his] daughter" and that he believed that his text messages to E fell within the scope of allowable contact. Although some of the text messages that defendant sent to E fell within the scope of what defendant believed was permitted under the terms of the FAPA order, defendant also sent E text messages that did not relate to their daughter. In particular, defendant's messages—"You are turning my world upside down yet again," "Every time I let my guard down you hit me with something else," and "Do you honestly care that little about me?"—did not pertain to their shared daughter. Thus, regardless of defendant's understanding of what was prohibited under the terms of the no-contact order, a reasonable trier of fact could find that defendant's messages to E were sent in willful violation of the order.

Affirmed.