No. 658          September 18, 2024          79

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

TROY ALLEN JONES,
*Defendant-Appellant.*

Harney County Circuit Court
22CN05587; A180625

Robert S. Raschio, Judge.

Submitted June 17, 2024.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Carla E. Edmondson, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Kyleigh Gray, Assistant Attorney General, filed the brief for respondent.

Before Aoyagi, Presiding Judge, Joyce, Judge, and Jacquot, Judge.

AOYAGI, P. J.

Reversed.

**AOYAGI, P. J.**

Defendant appeals a judgment finding him in contempt of court for willfully violating a Family Abuse Prevention Act (FAPA) restraining order by having contact with the protected person. *See* ORS 33.015(2)(b) (defining "contempt of court" to mean various acts "done willfully," including "[d]isobedience of, resistance to or obstruction of the court's authority, process, orders or judgments"). Defendant contends that the trial court applied an incorrect legal standard and, as a result, found him to have "willfully" violated the restraining order while also finding that he believed at the time that the order had been dismissed. The state challenges defendant's interpretation of the trial court's findings and argues that the court did not err. As described below, we agree with defendant that the trial court applied an incorrect legal standard and that, given the court's findings, it should not have found him in contempt. Accordingly, we reverse.

FACTS

On November 16, 2021, defendant's niece, E, obtained a FAPA restraining order against him. Defendant was personally served with the restraining order at that time. The order states that its provisions "are in effect for a period of one (1) year from the date of the judge's signature (*unless renewed before it expires*) or until the order is dismissed, modified, or replaced, whichever occurs first." (Emphasis in original.)

In May 2022, defendant was charged with violating the restraining order and placed on a release agreement. While in court on that matter, the court told him "to follow the restraining order."[1]

On November 7, 2022, a police officer stopped E for a traffic violation and learned from a records check that E had a restraining order against defendant, who was a passenger

---

[1] Defendant testified at trial that, in May 2022, he was "charged" with violating the restraining order, that he "believes" he was placed on a release agreement, and that the court told him when he was in court on that matter "to follow the restraining order." The sheriff's deputy who served the restraining order on defendant also testified to having twice "arrested" defendant "related to [the] restraining order," although he did not provide dates or any other detail. That is the totality of the trial evidence regarding prior violations of the restraining order.

in the vehicle. E was giving defendant a ride to the bank. The officer asked defendant whether he knew about the restraining order. Defendant told the officer that he thought it had been "rescinded or cancelled." E also told the officer that she thought it had been "rescinded."

Defendant was arrested and charged with contempt of court.[2] At trial, the state called two witnesses— the sheriff's deputy who had served the restraining order on defendant in November 2021, and the police officer who conducted the traffic stop in November 2022. The only other trial witness was defendant, who testified on his own behalf. Defendant did not contest that he had violated the restraining order by being in E's car on November 7, 2022, but he maintained that the violation was not "willful." He testified that he did not think at the time that the restraining order was still in effect, that he "thought it was over," that the restraining order that his mother had obtained against him had been rescinded, that he did not believe that E still had a valid restraining order, and that he did not willfully violate the restraining order. Defendant acknowledged that he had not called the court or his lawyer to check the status and that, in retrospect, he "should have called the court." But, he reiterated, E told him that it was dismissed.

The court found defendant in contempt. The court reasoned that, because defendant had not called the court to verify dismissal of the restraining order, the state had proved a "willful" violation under the "head in the sand" theory of willfulness articulated in *State v. Guzman-Vera*, 305 Or App 161, 469 P3d 842, *rev den*, 367 Or 115 (2020):

> "If you'd called the Court and some clerk had told you, 'Hey, that was dismissed,' you would have a good faith basis to believe that it was dismissed, but you didn't do that extra work that was necessary to determine for sure that the restraining order had been dismissed.

> "You are—were at that time in contempt of the Court's order because as it is also pointed out in *Guzman-Vera*, you cannot rule out willfulness under a head-in-the-sand theory; she thought it was dismissed, I thought it was dismissed, so it was dismissed. That's just not how it works.

---

[2] In the meantime, the restraining order expired on November 16, 2022.

"This Court is the one who issues the order. You had an obligation to this Court to make sure whether the order was dismissed or not.

"So I am going to find you in willful contempt of the Court's order with regards to that restraining order, that contact."

In explaining its verdict, the court did not expressly credit or discredit defendant's testimony that he believed the restraining order had been dismissed because E told him so. However, two days later at sentencing, the court indicated that it had credited that testimony. The court acknowledged during sentencing what defense counsel described as "uncontroverted evidence that both parties told the police officer at the scene that they thought the restraining order was no longer in effect." More importantly, in sentencing defendant to five days in jail instead of the 10 days recommended by the state, the court gave as one of its reasons for the lighter sentence that "[defendant] indicated that both of [them] had thought it was dismissed." If the court had discredited that testimony, it would not make sense to cite it as a reason for a lighter sentence, so that statement clarifies the factual findings on which the trial court based its verdict. *Cf. State v. Nicholson*, 282 Or App 51, 56, 383 P3d 977 (2016) (citing a statement made by the trial court during sentencing as corroborating our understanding of its findings at verdict with respect to whether the defendant believed that the restraining order had been dismissed at the time that she violated it).

Thus, we understand that, in finding defendant in contempt, the trial court credited defendant's testimony that when he rode in E's vehicle on November 7, 2022, he believed that the restraining order had been dismissed because E had told him so, but nonetheless found defendant to have "willfully" violated the restraining order because defendant did not call the court to verify that information.

Defendant appeals the judgment finding him in contempt.

## ANALYSIS

To prove punitive contempt, "the state must establish the existence of a valid court order, the defendant's

knowledge of that order, and the defendant's willful noncompliance with that order." *State v. Harrison*, 290 Or App 766, 769, 417 P3d 513 (2018) (internal quotation marks omitted). Here, it is undisputed that the state proved the existence of a valid court order and defendant's knowledge of that order. Only the willfulness element is at issue.

ORS 33.015(2)(b) lists the various ways that one may commit contempt of court, all of which must be "done willfully" to constitute contempt. The term "willfully" is not defined by statute. *Nicholson*, 282 Or App at 56 ("There is no statutory definition of 'willfully' for purposes of ORS 33.015(2)."). Moreover, "'[w]illful' and 'willfully' are notoriously elusive terms, with their content varying qualitatively and dramatically in different contexts." *Id.* at 57. However, as to the meaning of "willfully" in ORS 33.015(2) in particular, the legislative history is clear as to the intended meaning of an otherwise "innately ambiguous term." *Id.* at 62. As used in ORS 33.015(2), "willfully" means "intentionally and with knowledge that the act or omission was forbidden conduct."[3] *Id.* (brackets omitted).

Because willfulness is an element of the offense, it was the state's burden to prove that defendant willfully violated the restraining order. *Harrison*, 290 Or App at 769. The state could do so through direct evidence, such as an admission by defendant that he knew he was violating the

---

[3] As described in *Nicholson*, 282 Or App at 57-58, the definition of "contempt" codified as ORS 33.015(2) was enacted as part of Senate Bill (SB) 376 (1991). Prior to the 1991 enactment, Oregon's contempt statute did not contain an express mental-state requirement, although "judicial decisions had incorporated and applied a willfulness requirement," which evolved through cases such as *State ex rel. Grover v. Grover*, 158 Or 635, 77 P2d 430 (1938), and *Couey and Couey*, 312 Or 302, 821 P2d 1086 (1991). *Nicholson*, 282 Or App at 58-59. The Court of Appeals' decision in *Couey* was on the legislature's mind when it enacted SB 376 (1991), prompting legislative discussion of the mental-state requirement. *Id.* at 58-61. That decision was subsequently overturned by the Supreme Court. *Id.* at 61. In *Nicholson*, we recognized that, for years, we had followed the Supreme Court's formulation of "willfully" in *Couey*, despite the court having "made it clear that it was addressing the application of only the former, repealed statute, and not the newly enacted ORS 33.015(2)(b)." *Id.* at 61. We undertook a proper statutory construction of ORS 33.015(2)(b) in *Nicholson*, which led us to conclude that the legislature intended "willfully" in that statute to mean "intentionally and with knowledge that the act or omission was forbidden conduct." *Id.* at 62 (brackets omitted). Thus, although the definition of "contempt" in ORS 33.015(2) has been in place since 1991, we look to case law post-dating our 2016 decision in *Nicholson* as the most relevant regarding what "willfully" means in ORS 33.015(2).

restraining order, or as is more common, through circumstantial evidence. *Elizabeth Lofts Condo Owners' v. Victaulic Co.*, 293 Or App 572, 580, 428 P3d 952 (2018). "A defendant's subjective intent may be inferred from the evidence and circumstances surrounding the defendant's actions, and such an inference is reasonable if there is a logical connection between the surrounding activity and the defendant's purported state of mind." *Id*. (internal quotation marks and alterations omitted). Thus, in nearly all cases, whether willfulness has been proved will come down to the trial court's credibility determinations, view of the evidence as a whole, and resulting finding as to the defendant's subjective intent at the time of the violation.

Consistent with that reality, defendant does not challenge the sufficiency of the evidence to prove willfulness in this case. He implicitly acknowledges that, on this record, the trial court *could* have discredited his testimony and relied on circumstantial evidence to find that he acted willfully. But he argues that the trial court in fact *credited* his testimony regarding a subjective honest belief that the restraining order had been dismissed—which the record also allowed the court to do—and then nonetheless found him in contempt because the court applied an incorrect legal standard for willfulness. Specifically, defendant challenges the "verification" requirement imposed by the court, which he argues conflicts with our decisions in *Nicholson* and *State v. Simmons*, 314 Or App 507, 509, 499 P3d 127 (2021).

In response, the state's primary argument is that "the trial court expressly found that defendant did not have a good faith belief that the order had been rescinded" and that the evidence was legally sufficient to support that finding. That argument is unavailing for two related reasons. First, it is evident from the court's speaking verdict that the court's finding that defendant acted "willfully" and not in "good faith" was based on its understanding of the legal standard—specifically that a person "willfully" violates a restraining order if they have an honest belief that it has been dismissed, based on information received from a third party, but fail to call the court to verify the dismissal—rather than being based on a finding that defendant did not

honestly believe that E's restraining order had been dismissed. Second, as already explained, defendant is not challenging the sufficiency of the evidence. He is not arguing that the trial court had to credit his testimony but instead that, having credited it, it was legal error to nonetheless find a willful violation of the restraining order. Those are fundamentally different arguments. *See State v. Langford*, 260 Or App 61, 68, 317 P3d 905 (2013) (recognizing the difference between those two types of arguments).

Because defendant's argument is in the nature of a challenge to the trial court's instructions to itself in a bench trial, the state's primary argument in response—which turns on the sufficiency of the evidence—is misplaced. The question properly before us is not what findings the trial court could have made but whether the trial court misunderstood and thus misapplied the law to the findings that it did make. *See State v. Butterfield*, 332 Or App 526, 534, 549 P3d 545 (2024) (addressing an argument "that the trial court incorrectly instructed itself on the elements of self-defense" in a bench trial and explaining that in such circumstances, "as we would for a challenge to jury instructions, we review for legal error").

On that issue, the state argues (in the alternative to its primary argument) that, even if the trial court found that defendant subjectively believed that the restraining order had been dismissed—as we have concluded that it did—such a finding "does not preclude a finding that his belief was not in good faith." The state compares this case to *Guzman-Vera*, which the trial court cited in its speaking verdict, arguing that relying on a representation by the protected person without calling the court to verify its accuracy is "akin to the head-in-the-sand approach the defendant took in *Guzman-Vera*."

We are unpersuaded that this case is akin to *Guzman-Vera*. Rather, we agree with defendant that it is controlled by *Nicholson* and *Simmons*.

In *Nicholson*, the defendant's husband, T, obtained a restraining order against her. 282 Or App at 52. While that order was in place, T communicated to the defendant

through a third party that he wanted to attempt a reconciliation and proposed a family trip with their young son over Father's Day weekend. *Id.* The defendant agreed, but only if the restraining order was "'dropped.'" *Id.* A few days before Father's Day, T emailed the defendant "that he was 'at the courthouse' with a coworker and 'in the process of' dismissing the FAPA order." *Id.* T then presented the defendant with a new wedding ring. *Id.* The defendant went on the Father's Day trip with T and their son, believing that the FAPA order had been dismissed. *Id.* at 53. In fact, it had not been dismissed. *Id.* During the trip, the defendant and T were stopped for a traffic violation, which led to the defendant's arrest for violating the restraining order. *Id.* The following week, T moved to dismiss the restraining order, and it was dismissed. *Id.* at 53 & n 3.

The trial court in *Nicholson* found that the defendant believed when she went on the Father's Day trip that the restraining order had been dismissed, based on what T told her, but it nonetheless found the defendant in contempt for "willfully" violating the restraining order, because she did not call the court to verify the dismissal. *Id.* at 54. The court reasoned that "the order was issued by the Court, and only until the Court, the Judge, signs that order dismissing it is the restraining order actually dismissed. And you did not take the steps to protect yourself in that instance[.] *** You did not verify that the Court had signed a dismissal, and so I do find you in contempt." *Id.* We reversed on appeal, concluding that the trial court could not find defendant in contempt given its finding as to her subjective belief:

> "A defendant who acts based on a good faith belief that a judicial order has been dismissed cannot be deemed to have acted with knowledge that it was forbidden conduct. Such a defendant cannot be deemed to have acted 'willfully' for purposes of ORS 33.015(2)(b). Consequently, the trial court's finding here as to defendant's contemporaneous, good faith belief contradicted an adjudication of contempt."

*Id.* at 62 (internal citation and some internal quotation marks omitted).

Similarly, in *Simmons*, the defendant was charged with domestic violence crimes against his girlfriend, L, and

entered into a release agreement with a "no contact" provision. 314 Or App at 509. Three months later, a police officer responded to a report of a man and woman fighting in a parking lot, who turned out to be the defendant and L. *Id*. The officer learned of the no-contact provision from dispatch and asked the defendant about it. *Id*. at 510. The defendant stated "'that [L] had told him that she had gone down to the courthouse and had the no-contact release dropped.'" *Id*. (brackets in original). When asked, the defendant acknowledged that he had not "contacted his attorney or the court to verify that information" but, instead, "took L's word for it." *Id*. The defendant was arrested and charged with violating the no-contact provision. *Id*.

At trial, L testified that she had told the defendant that she had "gone down to Center for Hope and Safety," "was clearing up the no-contact order and stuff," and "had taken care of it and everything," and so "he was under the impression that that's what had happened." *Id*. at 509. The prosecutor argued in closing that it did not matter whether L told the defendant that the no-contact order had been dropped, because the defendant "should've taken additional steps" to verify that information. *Id*. at 510 (emphasis omitted). The trial court agreed, concluding that it was irrelevant to willfulness whether L told the defendant that the no-contact order was no longer in effect, because the defendant needed to "check with [his] lawyer" before relying on such a statement. *Id*. at 511. On appeal, we reversed and remanded. *Id*. at 516. We reversed because the trial court had misunderstood the legal standard for willfulness, and we remanded for a new hearing because the trial court had not made the necessary finding as to whether the defendant actually believed when he had contact with L in the parking lot that the no-contact order was no longer in effect. *Id*. at 514-16.

This case is controlled by *Nicholson* and *Simmons*. Like the trial courts in those cases, the trial court here erroneously believed that, even if defendant subjectively believed that the restraining order had been dismissed, he "willfully" violated the order because he did not call the court to verify the dismissal. That view of the law is incompatible with our holdings in *Nicholson* and *Simmons*.

Because the trial court credited defendant's testi-
mony regarding his subjective belief, this case is exactly like
*Nicholson*,[4] and it is unlike cases in which we have affirmed
contempt findings because the trial court expressly discred-
ited the defendant's claimed subjective belief. For example,
in *State v. Mohammed*, 301 Or App 367, 371, 456 P3d 661
(2019), *rev den*, 366 Or 493 (2020), the trial court found,
based on its credibility assessment of the witnesses, that the
protected person "had never told defendant that the FAPA
order had been dismissed." In *State v. Arnold*, 301 Or App
642, 643, 458 P3d 725 (2020), the trial court found that the
defendant knew that a restraining order applied to her,
despite it identifying her by her husband's last name that
she had not legally taken. And in *State v. Reed*, the trial
court discredited the defendant's claim that he believed the
restraining order had been dismissed, where the protected
person (his ex-girlfriend) had told him several months ear-
lier that she had "dropped" it, but the circumstances led
the court to conclude that the defendant did not honestly
believe that. 329 Or App 717, 721-22, 542 P3d 897 (2023)
("[C]ontrary to defendant's argument, the court's statement
that he 'knew' that he 'ha[d] to confirm' the dismissal of the
protective order was in the context of explaining why the
court did not believe that defendant had a good-faith belief
given his prior experience with the FAPA restraining order
process, rather than the imposition of an additional require-
ment inconsistent with defendant's professed good faith, as
in *Nicholson*." (Brackets omitted.)).

This case is also unlike *Guzman-Vera*, the case on
which the trial court relied in its speaking verdict and on
which the state relies on appeal. In that case, the defen-
dant was served with a FAPA restraining order when he
was released from jail. 305 Or App at 163. "Among other
things, the order prohibited him from being within 100

---

[4] The only difference between this case and *Nicholson* is that the *Nicholson*
defendant testified in greater detail regarding what the protected person told
her and why she believed him. That type of detail may increase a defendant's
credibility and make it more likely that the trial court will believe them, but it is
not required. In this case, both defendant and E told the officer during the traffic
stop that they thought the restraining order had been dismissed, and defendant
testified at trial that he believed it had been dismissed because E told him so and
because his mother's restraining order had been dismissed. No more evidence
was required. This case is thus exactly like *Nicholson*.

yards of several specific locations, the addresses of which were listed on the third page of the eight-page-long order." *Id*. A police officer and an interpreter reviewed the first page of the order with the defendant, who was a native Spanish speaker, but no other pages. *Id*. Thinking that the protected person, C, would likely be at their apartment, the defendant went to C's sister-in-law's home instead. *Id*. He "did not stop to read the FAPA order in full because it was late at night, because he was walking, and because he does not 'read English very well.'" *Id*. at 163-64. Consequently, "he did not see that the home he was headed for was one of the places that the FAPA order said he could not be." *Id*. at 164. C was there when he arrived, and C's sister-in-law called the police. *Id*. The responding officer found the defendant, who had the restraining order on him, "walking away from the residence but still within 100 yards of it." *Id*.

The defendant was found in contempt for violating the restraining order. *Id*. Both the trial court and we rejected the defendant's argument that he could not be found to have "willfully" violated the restraining order because he had not read the portion of the order that listed prohibited addresses. *Id*. We reasoned:

> "Proof that a person knew of the requirements of a court order, but chose not to comply with those requirements, is not the only way to prove that a person willfully disobeyed a court order—historically, anyway. Another judicially recognized path to proving the willful violation of a court order is to show that a defendant opted to take a head-in-the-sand approach to the order. *Dept. of Rev. v. Carpet Warehouse*, 296 Or 400, 407-08, 676 P2d 299 (1984). That is, willfulness can be shown through proof that the defendant knew about the order but chose to ignore it, and then failed to comply with the order's requirements in that state of elective ignorance: 'A party cannot ignore a court order and then claim that the act of ignoring it is not wilful.' *Carpet Warehouse*, 296 Or at 407; *see Pamplin v. Victoria*, 138 Or App 563, 566-67, 909 P2d 1245 (1996) (concluding that an attorney who ignored discovery requests and a related court order acted willfully in not complying)."

*Id*. at 166-67.

The trial court's approach in *Guzman-Vera* was consistent with *Carpet Warehouse* and *Pamplin*, so we concluded that it was not error for the trial court to find "that defendant's violation was willful because defendant had the order and knew that it was a restraining order but chose not to learn its contents." *Id.* at 167. We distinguished *Nicholson*, explaining that we were "not called upon to address" in *Nicholson* "whether a person who knows about a court order, chooses to ignore it, and then intentionally engages in conduct that violates it, acts willfully for purpose of the contempt statutes" and that we "do not read *Nicholson* to rule out proof of willfulness under a head-in-the-sand theory in a case that presents that issue." *Id.* at 168.

We disagree with the state—and the trial court— that *Guzman-Vera* applies here. The historically accepted "head-in-the-sand" theory of willfulness addressed in *Guzman-Vera* applies when a person "chooses to ignore" a restraining order, such as by choosing not to read it. *Guzman-Vera*, 305 Or App at 168. It does not apply when someone honestly believes that the restraining is no longer in effect; indeed, if *Guzman-Vera* applied that broadly, it would have necessarily overruled *Nicholson* and *Simmons*, which it decidedly did not do. *See id*. at 167-68 (distinguishing *Nicholson*).

In sum, the trial court applied an incorrect legal standard when it found defendant in contempt, necessitating reversal. Had the trial court made no finding regarding defendant's subjective belief as to the status of the restraining order on November 7, 2022, we would remand for a new hearing under the correct legal standard. However, because the court credited defendant's testimony in that regard, a remand is not necessary or appropriate. *Compare Nicholson*, 282 Or App at 63 (reversing without remand where the trial court had already made a finding on the defendant's subjective belief), *with Simmons*, 314 Or App at 516 (reversing and remanding for a new contempt hearing where the trial court made no finding as to the defendant's subjective belief and the evidence allowed a determination either way). We therefore reverse the judgment finding defendant in contempt.

Reversed.